JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Laurice Gilbert, appeals his conviction and sentence in the Cuyahoga County Court of Common Pleas on two counts of aggravated murder and two counts of aggravated robbery, each with one- and three-year firearm specifications. For the reasons stated herein, we affirm in part, reverse in part and remand the case for further proceedings.
 {¶ 2} Gilbert was indicted on the above charges on October 26, 2006.[1] The case proceeded to a jury trial, and Gilbert was found guilty on all counts. The trial court sentenced Gilbert to concurrent sentences of thirty years to life imprisonment on each of the aggravated murder counts, and eight years imprisonment on each of the aggravated robbery counts. The court also imposed three-year terms for the firearm specifications that merged and were to run consecutive to the base counts. Gilbert received a total aggregate sentence of thirty-three years to life.
 {¶ 3} The charges stemmed from an incident that occurred on October 11, 2006. On that date, Dontay Minor, the victim, was shot to death while visiting an apartment in Cleveland. The apartment was the home of Davita Moton, who lived there with her five-year-old son and her boyfriend, Alan Davis.
 {¶ 4} That morning, the victim arrived at the apartment and was playing video games with Davis. Moton was also home, but her son was at school. Gilbert arrived a little while later. All of the individuals present were friends. *Page 4 
 {¶ 5} That afternoon, Moton left the apartment to get her son from school. Gilbert also left to pick up another friend, Jamie Byrd. Gilbert eventually returned to Moton's apartment with Byrd. On the way, Gilbert told Byrd that he had to go and pick up his money.
 {¶ 6} When Gilbert and Byrd arrived at the apartment, Davis and the victim were present. Byrd began playing a video game, and Gilbert was having a conversation with the victim.
 {¶ 7} Davis testified that he heard Gilbert say to the victim "cause I need that" and "you can't leave me f****d up like that," and that Gilbert kept saying "just give me my s***." Davis heard the victim say that he didn't have anything and observed the victim take off his shoes and empty his pockets to display that nothing was in them. Davis then heard the victim say, "I see you got your little gun. I don't know if you gonna shoot me or pistol-whip me or whatever you gonna do." When Davis turned to look, he saw that Gilbert was brandishing a gun in the victim's direction. Davis ran to the porch and heard gunshots.
 {¶ 8} Byrd testified that he was playing a video game, that Gilbert and the victim were having a conversation, that he heard gunshots, that he ran to the porch with Davis, and that he heard more shots. After hearing the door open and close, Byrd ran out of the apartment. *Page 5 
 {¶ 9} Davis testified that he saw the victim dragging himself out of the back room and that he, Davis, called 911. Davis testified that he sat with the victim as other people started coming into the apartment. One of the persons who arrived was Carlos Jackson. Davis testified that Carlos Jackson was not previously in the apartment and that he was just looking.
 {¶ 10} The victim suffered multiple gunshot wounds and died on the scene. He was found to have approximately $2,000 in cash in the seat of his boxer shorts.
 {¶ 11} Approximately two hours after the shooting, Gilbert purchased a one-way ticket to Los Angeles. He was apprehended in Los Angeles approximately six months later.
 {¶ 12} As part of their investigation, the police performed gunshot residue tests on Davis, Moton, and Jackson. Each tested positive for gunshot residue on the right hand, but not the left. Testimony was presented that this indicated these individuals had either fired a weapon, were close to the discharge of a weapon, or handled a recently fired weapon or touched a surface with primer residue on it. Testimony was also presented that Davis and Jackson were not considered suspects, but that Gilbert and Byrd were considered possible suspects in the case.
 {¶ 13} Upon his conviction and sentence, Gilbert timely filed this appeal, raising thirteen assignments of error for our review. His first assignment of error provides as follows:
 {¶ 14} "I. The firearm specifications in count one are invalid because they fail to allege a mens rea; and because they are pled in the disjunctive and thus fail to *Page 6 
ensure that the grand jury was in sufficient agreement about the allegations in the case."
 {¶ 15} Gilbert first argues that the firearm specifications are defective because they fail to specify the element of recklessness. In making this argument, Gilbert relies upon State v. Colon,118 Ohio St.3d 26, 2008-Ohio-1624 ("Colon I"). Initially, we must recognize thatColon I involved the omission of the mens rea element of recklessness from an indictment for robbery in violation of R.C. 2911.02(A)(2). Id. The holding in Colon I was confined to the "unique" facts of that case, and the Ohio Supreme Court has clarified that "structural-error analysis * * * is appropriate only in rare cases, such as Colon I, in which multiple errors at the trial follow the defective indictment." State v.Colon, 119 Ohio St.3d 204, 205, 2008-Ohio-3749 ("Colon II").
 {¶ 16} We do not find that Colon I has any applicability to the firearm specifications herein. This court has previously found: "`[A] firearm specification does not constitute a separate offense and therefore does not impose a culpable mental state. Firearm specifications are penalty enhancements that attach to an underlying offense, [and] thus do not include a specific mens rea of their own.'"State v. Briscoe, Cuyahoga App. No. 89979, 2008-Ohio-6276, quotingState v. Cook, Summit App. No. 24058, 2008-Ohio-4841 (internal citations omitted). Accordingly, we find Gilbert's argument lacks merit.
 {¶ 17} Gilbert next claims that the firearm specifications were defective because they were pled in the disjunctive and there is no assurance of a unanimous decision. More specifically, he states the specifications are "duplicitous" in that he *Page 7 
was charged with having committed the specifications in a variety of ways — either the firearm was about his person or under his control (one-year specification); or that he displayed or brandished or
indicated that he possessed the firearm or actually used it (three-year specification).
 {¶ 18} In support of his position, Gilbert relies on State v.Johnson (1989), 46 Ohio St.3d 96. The Ohio Supreme Court more recently addressed the issue of juror unanimity in State v. Gardner,118 Ohio St.3d 420, 429, 2008-Ohio-2787. In Gardner, the court instructed as follows:
 "In determining whether the state has impermissibly interfered with a defendant's Crim. R. 31(A) right to juror unanimity and the due process right to require that the state prove each element of the offense beyond a reasonable doubt, the critical inquiry is whether the case involves `alternative means' or `multiple acts.'
 "In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means. In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt.
 "In multiple acts cases, on the other hand, several acts are alleged and any one of them could constitute the crime charged. In these cases, the jury must be unanimous as to which act or incident constitutes the crime. To ensure jury unanimity in multiple acts cases, we require that either the State elect the particular criminal act upon which it will rely for conviction, or that the trial court instruct the jury that all of them must *Page 8 
agree that the same underlying criminal act has been proved beyond a reasonable doubt. [citations omitted]."
 {¶ 19} Here, we find the firearm specifications at issue involved alternate means or bases for enhancing the penalty, rather than multiple distinct acts that could constitute the offense. The jury was unanimous in its finding that Gilbert had committed the offense of aggravated murder, as well as the accompanying firearm specifications, and there was substantial evidence to support each alternative means of the specifications.
 {¶ 20} We also find that because Gilbert failed to object to this issue at trial, he has waived all but plain error. Crim. R. 52(B). Our review of the record reflects that the specifications tracked the language of the requisite statutes and reveals nothing rising to the level of plain error. We conclude that no error, plain or otherwise, occurred.
 {¶ 21} For the same reasons stated above, we reject Gilbert's similar challenges to the firearm specifications raised in his other assignments of error.
 {¶ 22} Gilbert's first assignment of error is overruled.
 {¶ 23} Gilbert's second assignment of error provides as follows:
 {¶ 24} "II: Count two fails to sufficiently allege either the offense of felony murder or the attendant firearm specifications."
 {¶ 25} Gilbert argues that the aggravated murder charge in count two was duplicitous in that it charged Gilbert with having caused the death of the victim while committing or attempting to commit aggravated robbery or while fleeing immediately *Page 9 
after committing or attempting to commit aggravated robbery. The trial court's jury instructions contained nearly identical alternative language, and no unanimity instruction was provided. Gilbert essentially claims that the jury might have convicted him on the basis of alternative theories. He also states that it is not clear which of the underlying aggravated robbery charges served as a basis for the felony murder charge in count two.
 {¶ 26} Gilbert did not object to the jury instructions, nor did he object to the indictment. Accordingly, he has waived all but plain error. Civ. R. 52(B).
 {¶ 27} A jury must unanimously agree that a defendant is guilty of a particular criminal offense before returning a guilty verdict on that offense. State v. Thomas (1988), 40 Ohio St.3d 213, paragraph three of the syllabus. Here, all twelve jurors found that Gilbert was guilty of aggravated murder as charged in count two of the indictment. Thus they unanimously determined that when Gilbert killed the victim, he had committed or attempted to commit an aggravated robbery. This was further supported by the jury's independent finding of guilt on the separate charges of aggravated robbery. Finally, the evidence supported the finding of guilt, and we cannot say that but for the claimed error there was a reasonable probability that the result of the trial would have been different. See State v. Williams, 99 Ohio St.3d 439, 2003-Ohio-4164
(finding no plain error with respect to aggravated-murder charge listing alternative theories as to the underlying felony of aggravated robbery). *Page 10 
 {¶ 28} Accordingly, having found no error, let alone any plain error, Gilbert's second assignment of error is overruled. Insofar as Gilbert challenges the underlying robbery charges, we address them next.
 {¶ 29} Gilbert's third assignment of error provides as follows:
 {¶ 30} "III: Count three fails to sufficiently allege either the offense of aggravated robbery or the attendant firearm specifications."
 {¶ 31} Count three of the indictment charged Gilbert with aggravated robbery in violation of R.C. 2911.01(A)(1). Gilbert argues the charge is defective because it fails to allege a mens rea regarding the possession and utilization of a firearm and also because it is pled in a disjunctive nature.
 {¶ 32} This court has previously found that aggravated robbery with a deadly weapon under R.C. 2911.01(A)(1) is a strict liability offense and that it is not necessary to prove a specific mental state regarding the deadly weapon element of the predicate offense or the related firearm specifications. State v. Peterson, Cuyahoga App. No. 90263,2008-Ohio-4239; Briscoe, supra; see, also, State v. Wharf,86 Ohio St.3d 375, 1999-Ohio-112, paragraph one of the syllabus.
 {¶ 33} With respect to pleading and instructing aggravated robbery in the disjunctive, the Ohio Supreme Court has specifically found that doing so is not improper. State v. McKnight, 107 Ohio St.3d 101,2005-Ohio-60. In McKnight, the court stated as follows: "Neither the kidnapping nor the aggravated-robbery instructions were improper, because the alternatives were given to the jury disjunctively. State v.Nields (2001), 93 Ohio St.3d 6, 30, 2001 Ohio 1291, *Page 11 752 N.E.2d 859; State v. Cook (1992), 65 Ohio St.3d 516, 527, 605 N.E.2d 70. Jurors need not agree on a single means for committing these offenses. The United States Supreme Court has stated, `Different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.'Schad v. Arizona (1991), 501 U.S. 624, 631-632, 111 S.Ct. 2491,115 L.Ed.2d 555, quoting McKoy v. North Carolina (1990), 494 U.S. 433, 449,110 S.Ct. 1227, 108 L.Ed.2d 369 (Blackmun, J., concurring)." Id. (Internal quotation omitted.)
 {¶ 34} Gilbert's third assignment of error is overruled.
 {¶ 35} Gilbert's fourth assignment of error provides as follows:
 {¶ 36} "IV: Count four fails to sufficiently allege either the offense of aggravated robbery or the attendant firearm specifications."
 {¶ 37} Count four of the indictment charged Gilbert with aggravated robbery in violation of R.C. 2911.01(A)(3). Gilbert claims that the indictment and jury instructions omitted the mens rea element. He states that this case presents the same structural error found inColon, 118 Ohio St.3d 26. We agree.
 {¶ 38} Unlike a charge of aggravated robbery under R.C. 2911.01(A)(1), which involves a deadly weapon element, a charge under R.C. 2911.01(A)(3) contains a physical harm element to which a mens rea of recklessness is applied.
 {¶ 39} This court recently addressed the issue in Briscoe, supra, wherein we stated as follows: "Based on the rationale set forth by the Ohio Supreme Court in *Page 12 Colon I, the failure to include the requisite mens rea of recklessness in defendant's indictment for aggravated robbery in violation of R.C. 2911.01(A)(3) rendered it defective. Applying the dictates set forth by the Ohio Supreme Court in Colon II to the record in this case, a structural error analysis is required. This is because the indictment lacked the requisite mens rea element, there is no evidence that defendant had notice of the mens rea element of this offense, nor was there any instruction to the jury on the mens rea element of this offense, nor did the parties discuss or refer to recklessness as being an element to this aggravated robbery count in closing arguments. Therefore, this case presents essentially the same accumulation of errors that lead to a finding of structural error that required reversal in [Colon I]. Accord, [State v. Alvarez, Defiance App. No. 4-08-02, 2008-Ohio-5189]."
 {¶ 40} We find the same analysis applies to the instant matter. Accordingly, Gilbert's conviction for aggravated robbery in violation of R.C. 2911.01(A)(3) and the specifications related to it are reversed. Gilbert's fourth assignment of error is sustained.
 {¶ 41} Gilbert's fifth assignment of error provides as follows:
 {¶ 42} "V: The trial court erred when it permitted the state to present evidence of the investigating officer's opinion as to who perpetrated the crimes."
 {¶ 43} Gilbert argues that the trial court erroneously permitted an investigating officer to opine, over objection, that Gilbert and Byrd were considered suspects in the case. Gilbert states that the opinion offered usurped the jury's role as fact-finder. *Page 13 
 {¶ 44} A review of the transcript reflects that testimony was presented pertaining to the police investigation, including testimony that Gilbert and Byrd were considered possible suspects in the case. The fact that Gilbert was a suspect was not prejudicial as he was on trial for the offenses. Further, no opinion was offered as to the officer's belief as to whether Gilbert had committed the offenses. Accordingly, Gilbert's fifth assignment of error is overruled.
 {¶ 45} Gilbert's sixth assignment of error provides as follows:
 {¶ 46} "VI: The trial court plainly erred when it permitted testimony regarding Mr. Gilbert's post-arrest silence."
 {¶ 47} Gilbert argues that the state elicited testimony that Gilbert remained silent after his arrest. A review of the transcript reflects that the prosecutor asked the arresting officer if he had any problem when he arrested Gilbert, to which the witness responded, "No." The prosecutor then asked "what if anything did [Gilbert] say upon his arrest," to which the witness responded, "nothing." It does not appear that any further comment was made about this at trial. Further, Gilbert did not object to the statement at trial.
 {¶ 48} The general rule is that a defendant's post-arrest silence cannot be used against him. Doyle v. Ohio (1976), 426 U.S. 610. This is because "post-arrest silence is inherently ambiguous since the silence may reflect only the defendant's exercise of his constitutional right to remain silent. * * * Any comment which infers that the defendant is guilty because he remained silent subverts the guarantees *Page 14 
afforded him by the Fifth Amendment of the Constitution of the United States." State v. Williams (1979), 64 Ohio App.2d 271, 276.
 {¶ 49} Here, the arresting officer merely expressed that there were no problems with the arrest and that Gilbert did not say anything at the time of the arrest. The statement was isolated and did not reflect upon Gilbert's desire to exercise his right to remain silent. Further, no further comment was made as to Gilbert's post-arrest silence to suggest that it was an inference of guilt. Accordingly, the prosecutor did not prejudice Gilbert by eliciting this statement, and we conclude that this matter does not rise to the level of plain error. Gilbert's sixth assignment of error is overruled.
 {¶ 50} Gilbert's seventh assignment of error provides as follows:
 {¶ 51} "VII: There is insufficient evidence of prior calculation and design to sustain a conviction for aggravated murder in count one."
 {¶ 52} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 53} Count one of the indictment charged Gilbert with aggravated murder in violation of R.C. 2903.01(A), alleging that Gilbert "purposely and with prior calculation and design" caused the death of the victim. Gilbert states there was *Page 15 
insufficient evidence that he had carefully formulated a scheme to kill the victim. He argues that the evidence reflects that he went back to the apartment to ask for his money, and it was only when he became frustrated over not receiving his money that he spontaneously decided to kill the victim.
 {¶ 54} The Ohio Supreme Court has stated that "`prior calculation and design' requires a scheme designed to implement the calculated decision to kill." State v. Cassano, 96 Ohio St.3d 94, 108, 2002-Ohio-3751
(internal quotation and citations omitted). A finding by the trier of fact of prior calculation and design is justified where the evidence presented at trial "reveals the presence of sufficient time and opportunity for the planning of an act of homicide" and "the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill." State v. Cotton (1978),56 Ohio St.2d 8, paragraph three of the syllabus. There is no bright-line test to determine the presence or absence of prior calculation and design, and each case will depend on the particular facts and evidence presented at trial. Cassano, supra.
 {¶ 55} Here, the evidence revealed that Gilbert told Byrd that he had to go pick up his money and that Gilbert returned to Moton's apartment and repeatedly asked the victim to "give me my s***." Gilbert had a gun with him, and after the victim claimed he did not have anything and failed to hand over any money, Gilbert brandished the gun at the victim. Gilbert did not merely threaten the victim or attempt to injure him with the gun, but rather, he shot the victim multiple times and killed him. He then went to the airport and purchased a one-way ticket to Los *Page 16 
Angeles. Later, it was determined that the victim in fact had approximately $2,000 on his person.
 {¶ 56} We find that the jury could reasonably conclude from this evidence that Gilbert had a plan designed to carry out his calculated decision to kill the victim if the victim did not turn over the money. Moreover, when we view the evidence in the light most favorable to the state, we hold that it was sufficient to establish beyond a reasonable doubt that Gilbert had committed the offense with prior calculation and design. Gilbert's seventh assignment of error is overruled.
 {¶ 57} Gilbert's eighth assignment of error provides as follows:
 {¶ 58} "VIII: There was insufficient evidence of aggravated robbery to sustain the convictions in counts two through four, respectively."
 {¶ 59} We address this assignment of error only with respect to counts two and three, as we have already found reversal is required on count four.
 {¶ 60} Gilbert argues that there was no evidence that he ever committed or attempted to commit a theft offense. He states that the testimony reflected only that he insisted that he was owed something but never tried to take anything from the victim.
 {¶ 61} Our review of the record shows that the victim possessed a large sum of money and that Gilbert shot the victim after he refused to hand it over. The fact that money was not actually taken was not a necessary element for the aggravated robbery offense. We find that there was sufficient evidence showing that appellant was committing or attempting to commit a theft offense and upon which a rational *Page 17 
trier of fact could find the elements of aggravated robbery proved beyond a reasonable doubt. Gilbert's eighth assignment of error is overruled.
 {¶ 62} Gilbert's ninth assignment of error provides as follows:
 {¶ 63} "IX: The convictions are against the manifest weight of the evidence."
 {¶ 64} Here again, as we have already found that Gilbert's conviction under count four must be reversed, we shall address this assignment of error as it pertains to the remaining counts.
 {¶ 65} Under this assignment of error, Gilbert generally states that the verdicts were against the manifest weight of the evidence for many of the reasons indicated under his sufficiency challenges. We are unpersuaded by his argument.
 {¶ 66} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Leonard, 104 Ohio St.3d at 68 (internal quotes and citations omitted).
 {¶ 67} Upon our review of the record, we find that there was substantial evidence upon which the jury could reasonably conclude that all the elements of the offenses and the specifications were proved beyond a reasonable doubt. Further, this court cannot say that the jury clearly lost its way or created a manifest *Page 18 
miscarriage of justice by finding appellant guilty of the charged offenses in counts one, two, and three.
 {¶ 68} Gilbert's tenth assignment of error provides as follows:
 {¶ 69} "X: The prosecution violated Mr. Gilbert's constitutional rights * * * when it engaged in improper closing argument."
 {¶ 70} Parties are granted wide latitude in closing arguments.State v. Smith, 97 Ohio St.3d 367, 377, 2002-Ohio-6659. The test for prosecutorial misconduct during closing argument is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights. State v. Smith (1984), 14 Ohio St.3d 13,14. To determine prejudice, the record must be reviewed in its entirety.State v. Lott (1990), 51 Ohio St.3d 160, 166.
 {¶ 71} Gilbert states that the prosecutor made improper comments in his closing argument, including the following: (1) referring to the victim as having been "gunned down like he was some animal . . . like he was some pest that they found in the house," (2) opining that Davis was sincere when he called the police, (3) indicating that justice for the victim required the jury to convict Gilbert, if the evidence was there, (4) referring to Gilbert as "a pretty violent guy" as a means of explaining why Byrd failed to identify Gilbert as the shooter, (5) referring to the homicide as "simple street justice," and (6) asking the jury to consider testimony as to the color of the gun in comparison to the color of the demonstrative model.
 {¶ 72} Initially, we find that even though the prosecutor improperly expressed his personal opinion during closing argument, he was arguably commenting on what *Page 19 
the evidence and testimony revealed. We further recognize that the trial court instructed the jury that their sole concern was to determine the facts and whether they proved the offenses under the indictment. The court also instructed the jury that the arguments of counsel were not evidence and could not be used in determining the facts. Finally, when considering the entire record in this case, we cannot say that, absent the remarks of the prosecutor, the jury verdict would have been different in light of the evidence presented at trial. Accordingly, we find that the prosecutor's statements during closing argument did not prejudice Gilbert or deny him a fair trial.
 {¶ 73} Gilbert's tenth assignment of error is overruled.
 {¶ 74} Gilbert's eleventh assignment of error provides as follows:
 {¶ 75} "XI: The trial court's jury instructions were erroneous because they failed to adequately instruct the jury on specific unanimity and the mens rea attendant to each count."
 {¶ 76} Gilbert argues that the same structural flaws that he asserted in assignments of error I through IV with respect to the indictment were also apparent in the jury instructions. For the same reasons expressed under those assignments of error, we find no merit to Gilbert's argument, except with respect to count four, which we have already determined should be reversed. Accordingly, we overrule Gilbert's eleventh assignment of error.
 {¶ 77} Gilbert's twelfth assignment of error provides as follows: *Page 20 
 {¶ 78} "XII: By virtue of their relationship to each other as lesser included offenses or allied offenses, the convictions must merge into a single conviction for aggravated murder."
 {¶ 79} As no objection was raised below, we review for plain error.
 {¶ 80} R.C. 2941.25 provides as follows:
 "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 81} In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the Ohio Supreme Court recently instructed as follows: "[C]ourts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import." State v. Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625, paragraph one of the syllabus. *Page 21 
 {¶ 82} Nonetheless, even when the offenses are of similar import under R.C. 2941.25(A), subsection (B) requires a court to review a defendant's conduct and permits convictions for two or more similar offenses if the offenses were either (1) committed separately, or (2) committed with a separate animus as to each. See id. at 57, citing State v.Blankenship (1988), 38 Ohio St.3d 116, 117.
 {¶ 83} In this case, we find that the aggravated murder offenses were allied offenses of similar import. Recognizing that an exact alignment of the elements is not required, we find that the aggravated murder offenses are so similar that the commission of one offense necessarily resulted in commission of the other. The record indicates that Gilbert shot a single victim, multiple times and in rapid succession, and did not have a separate animus for each count. Under such circumstances, this court has previously held that a defendant who kills only one victim and is convicted of two aggravated murder counts may be sentenced on only one count. State v. Goldsmith, Cuyahoga App. No. 90617, 2008-Ohio-5990; see, also, State v. Smith (Aug. 21, 1997), Cuyahoga App. No. 70855, citing State v. Waddy (1992), 63 Ohio St.3d 424. Accordingly, we find the trial court should have merged the aggravated murder convictions for sentencing. Because Gilbert should have been convicted of only the one offense, and hence the outcome of the proceeding clearly would have been different, we find that a plain error occurred. SeeGoldsmith, supra; State v. Shaw, Scioto App. No. 07CA3190,2008-Ohio-5910.
 {¶ 84} With respect to the aggravated robbery charge in count three, although the aggravated robbery occurred in conjunction with the aggravated murder, the *Page 22 
record reflects that a separate animus existed. The evidence reflects that in committing the aggravated robbery, Gilbert was seeking money from the victim. When the victim did not comply, Gilbert, acting with a separate animus, shot and killed the victim. Further, we find no merit to Gilbert's argument that aggravated robbery is a lesser included offense of aggravated murder in this case. See State v. Ingram (Dec. 26, 1991), Summit App. No. 15049. Accordingly, we find no error as to the aggravated robbery charge in count three.
 {¶ 85} Having already determined count four must be reversed, we do not consider it hereunder. Accordingly, Gilbert's twelfth assignment of error is sustained in part and overruled in part.
 {¶ 86} Gilbert's thirteenth assignment of error provides as follows:
 {¶ 87} "XIII: "Mr. Gilbert received the ineffective assistance of counsel."
 {¶ 88} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668, State v. Brooks (1986),25 Ohio St.3d 144. Judicial scrutiny of defense counsel's performance must be highly deferential. Strickland, 466 U.S. at 689. In Ohio, there is a presumption that a properly licensed attorney is competent.State v. Calhoun, 86 Ohio St.3d 279, 1999-Ohio-102. *Page 23 
 {¶ 89} Gilbert asserts that his trial counsel was ineffective in connection with various rulings that we have already addressed herein. We do not find that any of the claimed deficiencies were prejudicial to Gilbert. Furthermore, even if we were to consider counsel's performance as deficient in regard to the claimed errors, we do not find that they rose to a level, individually or cumulatively, that the result of Gilbert's trial would have been different. Therefore, Gilbert's claim of ineffective assistance must fail, and we overrule his thirteenth assignment of error.
 {¶ 90} Judgment affirmed in part, reversed in part, and case remanded for further proceedings consistent with this opinion.
It is ordered that appellee and appellant share costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] The charges included two counts of aggravated murder in violation of R.C. 2903.01(A) and 2903.01(B), two counts of aggravated robbery in violation of R.C. 2911.01(A)(1) and 2911.01(A)(3), and firearm specifications with each charge under R.C. 2941.141 and 2941.145. *Page 1