JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Ronrico Williams, appeals his conviction. Finding merit to the appeal, we reverse.
 {¶ 2} In April 2007, Williams was indicted on two counts of aggravated robbery under R.C. 2911.01(A)(1) and 2911.01(A)(3), both of which carried gun specifications. In February 2008, he was tried by a jury, along with his codefendant, Cameron Ryan. Williams was convicted of aggravated robbery under R.C. 2911.01(A)(3) and sentenced to four years in prison.
 {¶ 3} The following evidence was presented at trial.
 {¶ 4} On the evening of September 29, 2006, two men attempted to rob Curtis Conner as he exited the Mount Carmel Deli. Before he entered the deli, he observed several men standing outside whom he had previously seen at the deli.
 {¶ 5} Conner made his purchase and exited the deli. He noticed two of the men, whom he later identified as Williams and Ryan, pull up camouflage bandanas to cover their faces. He was able to clearly see their faces before they pulled up the bandanas. Feeling wary, Conner quickly got into his vehicle and started the engine. *Page 4 
 {¶ 6} Ryan confronted him and said, "Give me everything you have." When Conner replied that he did not have anything, Ryan said, "Give me your wallet." Then Ryan tried to grab Conner and pull him out of his vehicle. Williams came up behind Ryan and hit Conner on the side of the face with the butt of a gun. Then Conner broke free from Ryan's grasp and drove away. He returned to the deli shortly after with a friend to look for the attackers. Conner asked the store owner to call the police, and the owner gave him ice for his swollen face. The police officer who responded to the scene testified that Conner's face was swollen and appeared to have been struck by a fist or an object. Conner sought no further medical treatment for his injury.
 {¶ 7} Several months later, Conner saw Williams at the deli and notified the police detective handling the case that he had seen one of his attackers. Conner told the detective the date and time of his observation and described Williams's attire. The detective obtained video surveillance from the deli to identify Williams. He then created digital photos of the screen images, learned Williams's name by presenting the photo to street informants, and presented Williams's Bureau of Motor Vehicles photo to Conner in a photo array.
 {¶ 8} Conner identified Williams as the individual who had attempted to rob him. The jury ultimately found him guilty of aggravated robbery under *Page 5 
R.C. 2911.01(A)(3) but not guilty on the related gun specification and the aggravated robbery charge under R.C. 2911.01(A)(1).
 {¶ 9} Williams appeals, raising three assignments of error.
 Sufficiency of the Evidence {¶ 10} In his first assignment of error, Williams claims that there was insufficient evidence to sustain his conviction.
 {¶ 11} In State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, the Ohio Supreme Court set forth the standard of review for a challenge to the sufficiency of the evidence. If "reasonable minds [could] reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt," then the criminal defendant may not prevail on a challenge to the sufficiency of the evidence. State v. Hall, Cuyahoga App. No. 90365, 2009-Ohio-461, ¶ 83, quoting Bridgeman. See, also, State v. Walker, Cuyahoga App. No. 89892,2008-Ohio-4231, ¶ 36.
 {¶ 12} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Thompkins, 78 Ohio St.3d 380, 386-87, 1997-Ohio-52,678 N.E.2d 541 and State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492. A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. *Page 6 Thompkins, at 386. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.Jenks, at 263. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 13} In the instant case, Williams was convicted of aggravated robbery in violation of R.C. 2911.01(A)(3), which states:
 "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall *** [i]nflict, or attempt to inflict, serious physical harm on another."
 {¶ 14} To prove aggravated robbery under R.C. 2911.01(A)(3), the State need not prove serious physical harm but may prove a mereattempt to cause serious physical harm. State v. Eley (1978),56 Ohio St.2d 169, 172, 383 N.E.2d 132, 134.
 {¶ 15} R.C. 2901.01(A)(5) defines "serious physical harm" for all offenses found in the Revised Code. "Serious physical harm" is:
 "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; (b) Any physical harm that carries a substantial risk of death; (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; (e) Any physical harm that involves *Page 7 
acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 16} Williams argues that the State did not prove that he inflicted or attempted to inflict serious physical harm upon Conner because Conner's injuries were minor.
 {¶ 17} In Eley, the defendant appealed his aggravated robbery conviction involving his wrestling the victim to the ground to steal a bag of money. The defendant claimed that he should not have been convicted of aggravated robbery because the victim had not sustained serious physical injuries. The Eley court upheld the conviction, holding that "a jury could reasonably find that the attacker would not have stopped short of serious physical harm had the victim failed to let go of the money bag." Id. at 172. In other words, "the jury could reasonably conclude, beyond a reasonable doubt, that the assailantattempted to inflict whatever harm was necessary to incapacitate [the victim]." Id. (Emphasis in original.)
 {¶ 18} In the instant case, the evidence at trial showed that Williams "pistol whipped" Conner to assist Ryan's grabbing Conner's wallet. Conner escaped by breaking free from Ryan's grasp and driving away. The jury could have reasonably concluded that if Conner had been unable to escape, Williams would have continued striking Conner's head or otherwise inflicting whatever harm was necessary to obtain his wallet. Therefore, the jury could have *Page 8 
reasonably found that Williams attempted to inflict serious physical harm on Conner.
 Defective Indictment Pursuant to Colon I and Colon II {¶ 19} In the second assignment of error, Williams argues that his conviction should be reversed because of a defective indictment — an indictment that lacked the necessary element of mens rea.
 {¶ 20} In State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624,885 N.E.2d 917 ("Colon I"), the Ohio Supreme Court reversed a robbery conviction, holding that the defective indictment for violation of R.C. 2911.02(A)(2) constituted structural error. The indictment was defective because it failed to charge recklessness as the mens rea, even though the mental state was an essential element of the crime. Id. Subsequently, the Ohio Supreme Court issued a clarification in State v.Colon, 119 Ohio St.3d 204, 2008-Ohio-3749, 893 N.E.2d 169 ("ColonII"), in reconsideration of its holding in Colon I.
 {¶ 21} The Colon II court limited the holding of Colon I to "rare cases, *** in which multiple errors at the trial follow the defective indictment." Id. at ¶ 8. It explained, "[i]n Colon I, the error in the indictment led to errors that `permeate [d] the trial from beginning to end and put into question the reliability of the trial court in serving its function as a vehicle for determination of guilt or *Page 9 
innocence.'" Id., citing Colon I, at ¶ 23 and State v. Perry,101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 17.
 {¶ 22} The Colon II court emphasized that its reversal in Colon I had been premised on the following four factors: (1) the indictment did not charge the recklessness element for robbery; (2) the State did not attempt to prove the element of recklessness; (3) the trial court failed to instruct the jury on the mens rea element of recklessness; and (4) in closing arguments, the State treated robbery as a strict liability offense. Id. at ¶ 6, citing Colon I, at ¶ 30, 31.
 {¶ 23} Since the Ohio Supreme Court's decision in Colon II, this court has reversed convictions in which errors stemming from a faulty indictment permeated the trial, causing structural error. See e.g.,State v. Gilbert, Cuyahoga App. No. 90615, 2009-Ohio-463; State v.Ginley, Cuyahoga App. No. 90724, 2009-Ohio-30 (applying theColon doctrine to an aggravated robbery conviction under R.C. 2911.01(A)(3)).
 {¶ 24} In the instant case, Williams's indictment was defective and led to errors that permeated the trial from beginning to end. First, the indictment did not charge recklessness as the mental element for aggravated robbery under 2911.01(A)(3). Second, the State did not attempt to prove the element of recklessness. Third, the trial court never instructed the jury on the mens rea *Page 10 
element of recklessness. Finally, the State did not mention the mens rea of recklessness in opening or closing arguments.
 {¶ 25} Accordingly, the second assignment of error is sustained. As this assignment of error is dispositive, we find the third assignment of error arguing manifest weight of the evidence to be moot.
 {¶ 26} Judgment reversed and case remanded.
 {¶ 27} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant recover of said appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, J., AND CHRISTINE T. McMONAGLE, J., CONCUR. *Page 1