JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} The state of Ohio appeals from an order that granted defendant-appellee Darrell Houston's motion for a new trial. The state complains that the court erred by granting Houston leave to file a motion for a new trial and by finding that Houston presented new, material evidence to warrant a new trial. We find no abuse of discretion and affirm.
 I {¶ 2} The facts offered at Houston's 1992 trial showed that a witness named James Pope testified that he worked at a convenience store in September 1991. Pope said that he had been in the basement of the store when he heard a gunshot. He thought the storeowner had accidently discharged a firearm, but when he came up the stairs, he surprised a gun-wielding robber and saw the storeowner slumping behind the register with a gunshot wound to the head. The robber saw Pope and ordered him to open the cash register, warning him that "[y]ou'll be looking just like [the store owner] if you don't open up." Frightened, Pope fumbled with the cash register and pleaded for his life. The robber said, "I am not going to shoot you, Boo."
 {¶ 3} Pope told the police that the robber looked like Houston, a man he knew by the names of "Darrell" and "Dee." Pope agreed that he knew Houston "fairly well" because he had gone to Houston's house to cut his hair. Pope gave the police a description of the shooter and the clothes that the shooter had been wearing. He specifically recalled telling the police that the shooter had a mark on the right side of *Page 4 
his face, although he conceded that his written statement did not include that fact. A bystander near the store who did not see the shooter's face corroborated Pope's description of the shooter's jacket, hooded sweatshirt and shoes. The police confirmed "Dee" as being Houston, and Pope positively identified Houston as the shooter from a photograph. Pope then requested a face-to-face identification with Houston and confirmed that Houston's clothing matched that of the shooter. The police were unable to recover any fingerprints or other physical evidence from the scene, although they were able to confirm the presence of gunshot residue on the sleeves of Houston's jacket.
 {¶ 4} About a month after the shooting, Pope called the police to say that he had been at a Halloween party and saw a person who looked like the robber. The police investigated Pope's new assertion, but were unable to find a person who matched the description of the robber.
 {¶ 5} At trial, Pope testified that Houston was not the shooter because "I don't see the mark on the right side of his face." He agreed that other than the mark, Houston was identical to the person who robbed the store and shot the storeowner. Pope said that the person he saw at the Halloween party not long after the robbery was definitely the robber because "I remember seeing the same mark on his face that I seen the guy with the mark there. That's what made me change my mind that it wasn't Darrell." Even so, when asked "[d]oes that person that you saw on Halloween fit the same description as the description of Darrell Houston," Pope answered, "[e]xactly." *Page 5 
 {¶ 6} A jury found Houston guilty of aggravated murder with a firearm specification, aggravated robbery, and having a weapon while under disability when he killed a convenience store owner during a robbery. In his direct appeal to this court, Houston raised issues relating to the weight and sufficiency of the evidence, and argued that the court abused its discretion by admitting evidence of his identity as the perpetrator and by admitting certain expert testimony. We rejected these assertions and affirmed the conviction. See State v. Houston (Jan. 13, 1994), Cuyahoga App. No. 64574. The supreme court refused to hear the appeal. See State v. Houston (1994), 69 Ohio St.3d 1478.
 {¶ 7} In 1995, Houston filed an application for reopening pursuant to App. R. 26(B), claiming that appellate counsel had been ineffective by failing to argue that trial counsel violated an essential duty by not having subpoenaed witnesses to testify at trial. We rejected these arguments as untimely and further noted that they could have been raised on direct appeal. State v. Houston (Jan. 13, 1994), Cuyahoga App. No. 64574, reopening disallowed (Feb. 15, 1995), Motion No. 259344. The supreme court affirmed, holding that Houston failed to show good cause for his untimely filing of the application for reopening. See State v.Houston (1995), 73 Ohio St.3d 346.
 {¶ 8} Houston then filed a petition for a writ of habeas corpus in federal court, again raising trial counsel's ineffectiveness and claiming that the state failed to present sufficient evidence of his guilt. The district court denied the petition, finding that Houston procedurally defaulted the ineffective assistance of appellate counsel *Page 6 
claim and that the evidence at trial was sufficient for a rational jury to find Houston guilty beyond a reasonable doubt. The United States Court of Appeals for the Sixth Circuit affirmed the denial of the petition, finding that Houston had not shown that the proceedings against him were fundamentally unfair or resulted in his unjust confinement. See Houston v. Anderson (C.A.6, 1997), 129 F.3d 1264.
 {¶ 9} In 1998, Houston returned to the state courts and filed a pro se petition for postconviction relief. The petition cited Pope's trial testimony that Houston was not the person inside the convenience store and argued that the verdict lacked evidentiary support. The court denied the petition without a hearing.
 {¶ 10} In December 2003, Houston sought leave to file a motion for a new trial on grounds of newly discovered evidence. The basis for the motion was Pope had submitted a sworn statement in which he said that "in October 1991 he witness [sic] the actual Perpetrator at a Halloween party approximately one month after the robbery and murder * * *." Pope also indicated that he lied to the police because "I was afraid of the Perpetrator and I knew he would kill me if I implicated him in this crime." The court conducted a hearing on the application and heard testimony from Pope. Apart from restating his reasons for falsely implicating Houston, Pope testified that he knew the name of the assailant as "Popeye[1] or something" and that the assailant was also known as "Dee" because "he was from Detroit." The court noted *Page 7 
that Pope claimed to have known "Popeye's" true name at the time of the Halloween party in 1991. In response to a question by the court as to Popeye's identity, Pope replied "I think it was the last name was Ware — started with the Dee Ware." When asked to clarify, Pope said "[t]he first name was Dee. I don't know if it was any other name Darrell or — and the last name was Ware." Pope also testified that while incarcerated at the same prison where Houston was incarcerated, they had a conversation about an affidavit.
 {¶ 11} The court denied Houston's application for leave, finding that there was no newly discovered evidence to warrant a new trial. The court found that the events recounted by Pope in 1991, 1992 and 2004 were substantially the same and that Pope had consistently described the assailant as a person who looked like Houston but who was taller and had a mark on the right side of his face. The court found that "[w]hile Pope claims to know the real perpetrator he has not made an identification." We affirmed the court's refusal to grant leave to file a delayed motion for a new trial, holding that Houston "did not offer any new evidence."State v. Houston, Cuyahoga App. No. 86652, 2006-Ohio-1599, at ¶ 2. We noted that "the eyewitness had recanted his identification of Houston at trial, and that Houston made this the subject of his post-conviction relief." Furthermore, we indicated that "the only new aspect to the motion for a new trial was the statement by the eyewitness concerning his motivation for allegedly misidentifying Houston. We held that the eyewitness's motivation was irrelevant, and that `the recantation was not new.'" Id. *Page 8 
 {¶ 12} In 2007, Houston filed a second application for leave to file a motion for a new trial. In the application, he claimed that Pope could, for the first time, identify "Popeye" as Eugene Demarr Ware, an inmate in the state of Georgia penal system whose voter registration records showed he lived in the city of Cleveland in 1991. Pope submitted an affidavit stating that "I got a good look at the assailant who I only knew by the street name Popeye aka Po Pi." He claimed that "for the first time ever I was shown a photograph of the actual assailant who robbed the store and shot and killed [the storeowner]" and that "I can testify that [Ware] was the actual assailant * * *." Houston also offered the affidavit of Bobby Ray Slaughter, a person who lived in the neighborhood where the robbery occurred and who stated that he identified a photograph of Ware as a person known to him as "Popeye," and that in September 1991 "Popeye" lived downstairs from his sister in Cleveland.
 {¶ 13} The state opposed the application for leave, arguing that Pope had identified "Popeye" as Ware during the 2004 hearing on the first application for leave to file a motion for a new trial, so Ware's identity was not new evidence. The court granted Houston's application for leave to file a motion for a new trial.
 {¶ 14} In his subsequent motion for a new trial, Houston argued that Ware's booking sheet allowed Pope to "identify the actual assailant by his name, identity and aliases (street name Popeye)," and that Pope did not have the opportunity to present this information at trial. The state opposed the motion, arguing that Pope had clearly testified at trial that Houston was not the robber, putting into issue Pope's credibility in light of his strong identification of Houston as the robber immediately after the *Page 9 
murder. The state argued that the new evidence would merely try to bolster Pope's credibility and thus did not constitute new and material evidence.
 {¶ 15} The court granted the motion for a new trial, stating that it would issue a "judgment entry in support of decisions." The court did not, however, issue a judgment entry in support of its decision. The state thereafter sought leave to appeal in this court and we granted that application.
 II {¶ 16} Crim. R. 33(A)(6) allows the court to grant a new trial "[w]hen new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial." When the defendant seeks a new trial on the basis of newly discovered evidence, the motion must be filed within 120 days after the judgment of conviction. See Crim. R. 33(B). The motion may be filed outside this time period if there is clear and convincing evidence that the defendant was "unavoidably prevented from the discovery of the evidence upon which he must rely." Id.
 {¶ 17} We review both aspects of Crim. R. 33 — permission for leave to file a motion for a new trial and the substantive ruling on the motion for a new trial — under the abuse of discretion standard. See State v.Bates, Franklin App. No. 08AP-753, 2008-Ohio-1422, ¶ 9. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.State v. Adams (1980), 62 Ohio St.2d 151, 157. *Page 10 
 {¶ 18} The state first argues that Houston's application for leave to file a delayed appeal did not show by clear and convincing evidence that he was unavoidably prevented from learning of Ware's identity. The state maintains that Houston had been aware of Ware's identity since at least January 2004, when, in response to a question concerning the name of the person who Pope saw at the halloween party shortly after the robbery, he replied: "I think it was the last name was Ware — started with the Dee Ware. * * * The first name was Dee. I don't know if it was any other name Darrell or — and the last name was Ware."
 {¶ 19} In State v. Schiebel (1990), 55 Ohio St.3d 71, 74-75, the supreme court stated:
 {¶ 20} "The standard of `clear and convincing evidence' is defined as `that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' Cross v.Ledford (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus; In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368, 18 OBR 419, 425, 481 N.E.2d 613, 620.
 {¶ 21} "Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. Ford v. Osborne (1887), 45 Ohio St. 1, 12 N.E. 526, paragraph two of the syllabus. However, it is also firmly *Page 11 
established that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court. An appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge. See Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411,461 N.E.2d 1273, 1276; C. E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 8 O.O. 3d 261, 376 N.E.2d 578."
 {¶ 22} There was competent, credible evidence to show clearly and convincingly that Houston had been unavoidably prevented from discovering this evidence sooner. At the time of the 2004 hearing, Pope had only a nickname and a surname of the person whom he believed had committed the robbery. Houston was both incarcerated and indigent, making his ability to search for "Popeye's" identity difficult. Testimony at the hearing on the application for leave to file a motion for a new trial showed that Houston had engaged the services of an investigator in 2006. He gave the investigator the surname "Ware" but told her that he knew the person by the nickname "Popeye." A person who lived in the area near where the robbery occurred recalled a person with the same nickname and thought that this person originally came from Indiana. At some point, Houston learned that this person had the first name of either "Lamar" or "Demarr," but could not be certain. The investigator made records checks in Indiana and made contact with the Gary Police Department. Those contacts led her to discover Demarr Eugene Ware, who had two *Page 12 
different social security numbers. The investigator eventually contacted the Cobb County, Georgia Sheriff's Department and obtained a booking sheet and mug shot photo of Ware. Pope then identified Ware as the man he knew as "Popeye" and whom he claimed had been the robber. Bobby Ray Slaughter, who lived in the neighborhood at the time of the robbery, also saw Ware's mug shot and identified him as the person whom he knew from the time of the robbery by the nickname "Popeye."
 {¶ 23} At the hearing on the application for leave to file a motion for a new trial, Houston and the state entered into a stipulation concerning a photograph submitted by Houston's mother to an assistant prosecuting attorney some time during the 1990's, "closer to the time of trial." The mother received the photograph from Slaughter and told the assistant prosecuting attorney that the photograph depicted the person known as "Popeye." The mother was told that Popeye's name was "Ware," but she did not personally know him. The assistant prosecuting attorney supposedly made a copy of the photograph but did not return the original photograph to the mother. The state represented to the court that no photograph had been made a part of the state's file in this case, nor did the state's file contain any notation that it had received a photograph from Houston's mother.
 {¶ 24} The court could rationally view these facts as showing by clear and convincing evidence that Houston had been unavoidably prevented from discovering Ware's identity and location. Even though Houston apparently had a photograph of the person known as Popeye, the state took the photograph and kept it. Houston *Page 13 
had no proper name for Popeye, and his subsequent incarceration made it difficult for him to locate that person. When he did learn of the name "Ware," it turned out that Ware had two different social security numbers and there were variations on how Ware spelled his name. At best, Houston had clues to Ware's identity but no solid facts. The record shows that the length of time needed to reduce these clues to facts was unavoidable.
 B {¶ 25} We likewise conclude that the court did not abuse its discretion by granting the motion for a new trial.
 {¶ 26} A defendant who seeks a new trial must show that the newly discovered evidence does not merely impeach or contradict the former evidence offered at trial and that the newly discovered evidence discloses a strong probability that it will change the result if a new trial is granted. State v. Petro (1947), 148 Ohio St. 505, 508.
 {¶ 27} Pope's identification of Ware as the robber did not impeach or contradict his trial testimony. Pope testified that Houston had not been the robber and that he had seen the actual robber about one month after the robbery, but he could not identify that person. He immediately told the police, but the police could not locate the person. At the same time, Houston's mother obtained a photograph of a person who had been identified by Slaughter as being Popeye. She gave that *Page 14 
photograph to the state and heard nothing more of it.[2] The state would not stipulate that it conducted no follow-up on the photograph, but did agree that its file did not contain the photograph or any mention of it.
 {¶ 28} Houston's conviction largely rested on the question of Pope's credibility: would the jury believe Pope's post-robbery identification of Houston or would it believe his subsequent recantation in light of his claim that he saw the real robber one month after the robbery. Apart from Pope's statements to the police immediately following the robbery, the state lacked proof of the robber's identity. No other witness saw the robber's face. The state had an unremarkable description of the robber's clothing being a hooded sweatshirt and white tennis shoes. It had conflicting descriptions of the robber's height and weight. The police found no fingerprints matching Houston's and although blood was found on a coat belonging to Houston, the blood did not match that of the victim. The gunshot residue recovered from the sleeve of Houston's coat was circumstantial evidence that he had fired a gun, but the scientific examiner who recovered the residue could not conclude that the residue came from the gun used in the murder. Likewise, the scientific examiner could not place a time or date on when the gunshot residue had been deposited on the sleeve of the coat. *Page 15 
 {¶ 29} By granting the motion for a new trial, the court necessarily concluded that Pope's identification of Ware as the shooter would result in a different outcome. Constrained as we are by the applicable standard of appellate review, we are unable to conclude that the court abused its discretion by so finding. Pope's credibility could be significantly enhanced if Houston were allowed to offer as evidence the identity of Ware, by name and photograph, as the robber at a new trial. That identification would be corroborated by Slaughter, who said that he recalled Ware from the time of the robbery and knew that Ware went by the name "Popeye." Houston could also benefit from the state's stipulation that his mother had given the state a photograph of the person identified as Popeye at a point in time near the trial. That nothing ever came of the photograph and it did not appear in the state's file could cast doubt on the thoroughness of the police investigation leading to the state's prosecution of Houston. In any event, the court's decision to grant a new trial in this case was not unreasonable, arbitrary, or unconscionable. The assigned errors are overruled.[3]
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 16 
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., and MARY EILEEN KILBANE, J., CONCUR.
[1] The record shows several variations on the spelling of this nickname: Popeye, Popi and Po-Pi. We assume that these spelling variations are pronounced identically to that of the cartoon character "Popeye," and use that spelling throughout for simplicity.
[2] It is unclear from the record when Houston's mother gave the photograph to the assistant prosecuting attorney. When the state set forth the terms of the stipulation, it told the court: "It is my understanding that the mother of the defendant sometime I would say in the `90's, closer time [sic] to the trial * * *." The named assistant prosecuting attorney was one of two assistant prosecuting attorneys who tried the case.
[3] The state also maintains that principles of res judicata should prevent Houston from filing a second motion for a new trial. Having affirmed the trial court's finding that Pope's identification of Ware constituted new evidence in support of Houston's application for leave to file a second motion for a new trial, we conclude that res judicata does not bar the second motion for a new trial. *Page 1