JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Alphonse Rogers ("defendant") appeals after being found guilty by a jury and convicted of burglary;[1]
kidnapping;[2] two counts of felonious assault;[3] and having a weapon while under disability.[4] Defendant was found guilty of one-and three-year firearm specifications on every count for which he was convicted. For the reasons that follow, we affirm in part, reverse in part and remand for further proceedings.
 {¶ 2} The Grand Jury issued a 13-count indictment that charged defendant with multiple offenses occurring on May 29, 2007 (counts 1-4) and June 12, 2007 (counts 5-13). Prior to trial, the court nolled, at the State's request, counts 3 and 6. During trial, the judge granted defendant's motion for acquittal as to counts 1, 4, 7, and 12. The jury found defendant not guilty on count 2 and not guilty on count 11. Defendant was found guilty of the remaining charges as stated above.
 {¶ 3} Although defendant was accused of committing multiple offenses on various dates, he was only found guilty of committing offenses on June 12, 2007. The facts discussed in this opinion will be limited accordingly.
 {¶ 4} Every count identified the same victim, who will be referred to in this opinion as "Tracy." According to the record, defendant had a relationship with Tracy. *Page 4 
 {¶ 5} At trial, the State presented the testimony of seven witnesses. Tracy's friend, Terry, testified first. On direct, Terry disclosed his conviction for sexual battery and that he had served a 16-year prison term. He had been friends with Tracy for about five years. On June 12, 2007, he was playing cards at Tracy's house, along with a female named Tabitha and her boyfriend. Tracy's phone rang a few times but she ignored it. As it was getting dark outside, they heard a "bam" at the door.
 {¶ 6} Terry testified that Tracy went to answer the door. She heard a "big boom" and saw molding from the door "flying in." A man appeared in the door wearing all black and pulled out a nine-millimeter handgun. Terry identified defendant as the man he saw with the gun. Defendant told Tracy "`Go upstairs and get my sh__ `fore you make me kill everybody in here.'" Defendant was pointing the gun in the direction of Terry and the two other houseguests. Tabitha tried to speak with the defendant but he told her to "step back."
 {¶ 7} Tracy went upstairs and defendant eventually ran up the stairs. A few minutes later, the defendant ran back downstairs and out the door.
 {¶ 8} Terry went upstairs and found Tracy sitting on the bed, holding her head. He noticed blood on her face and all over the bedspread and floor. He told someone to call an ambulance and the police. Tracy was taken to the hospital and Terry remained to meet police at the house.
 {¶ 9} According to Tracy, she and defendant were dating. Defendant spent the night with her on June 11, 2007. By June 12, 2007, they decided to leave each *Page 5 
other alone and end the relationship. Tracy said on that day defendant repeatedly called her and sent her text messages demanding she return some of his belongings. She ignored his calls and messages as she was at work.
 {¶ 10} Tracy returned home to find her friend Tabitha and Tabitha's boyfriend waiting for her. When Terry arrived, the foursome began playing cards. Tracy said defendant continued to call and send her text messages, which she continued to ignore. Minutes later, she heard a boom at the front door. She went to the door where she encountered defendant angry and demanding his belongings. Tracy told defendant to meet her at the backdoor. Instead, he kicked in the door. He ordered her to get his things and then pulled a gun saying, "get my sh__ `fore you make me kill everyone in here." Tracy described the gun as a nine-millimeter that belonged to defendant.
 {¶ 11} Tracy ran up the steps, called 9-1-1 from her cell phone, and then hung up because the dispatcher was asking too many questions. As defendant ran up the steps, she tossed the phone on the bed. Defendant hit her in the face with the gun. She felt blood and fell to the bed. As she went to get his cologne, he hit her again in the back of the head with the gun. Defendant then left.
 {¶ 12} Terry came upstairs, where he found her covered in blood. When police arrived, she was taken to the hospital where she received stitches for her head wounds.
 {¶ 13} On cross-examination, Tracy admitted that she and the defendant had a troubled relationship. She was angry when the defendant borrowed her car *Page 6 
purportedly for work but instead picked up another female. Tracy admitted that she agreed to reconcile with the defendant after accusing him of trying to smother her. Tracy explained that defendant became angry when her incarcerated husband called her on June 11, 2007. There was also some testimony that Tracy had led the defendant to believe she had been pregnant with his child when, in fact, she was not.
 {¶ 14} Tracy also claimed that she and Terry did not talk very frequently. However, telephone records reflect that he contacted her many times after June 12, 2007. Phone records also showed that the last time the defendant phoned the victim on June 12, 2007 was 10:51 a.m., and the last text was at 12:40 p.m. The victim denied this, stating she received the last call at 9:00 p.m. and that any calls made later were received by her sister at the hospital.
 {¶ 15} Tracy denied ever giving defendant keys to her home.
 {¶ 16} Police testified that they did not fingerprint the scene but did take photographs. The victim was bleeding and taken to the hospital. Police arrived around 9:20 p.m.
 {¶ 17} Defendant stipulated to his prior conviction.
 {¶ 18} During trial, Tracy was held in contempt and placed in a holding cell. A police officer was permitted to visit with her in the holding cell. The court explained that the officer was a relative and the purpose of the visit was to make arrangements for child care. *Page 7 
 {¶ 19} The defense presented the testimony of the records custodian for Revol Wireless. He identified certain documents that he prepared under subpoena from the defense; specifically, defense exhibit C1 and D1. He denied preparing other summaries containing similar information in a different format; specifically, C2 and D2. Over objection, the trial court excluded C2 and D2 from evidence.
 {¶ 20} The trial court denied the defense request to have the State elect one of the two theories of kidnapping that had been indicted. The trial court also denied the defendant's request that the jury be instructed that the stipulation of prior conviction be only considered for purposes of count 13 and not as other acts evidence.
 {¶ 21} The jury returned the verdict as stated above and the trial court sentenced defendant to a prison term of eight years.
 {¶ 22} After trial, defendant filed a motion for new trial, which was overruled at the sentencing hearing. The basis of the motion for new trial was that the State had not properly identified a witness, did not provide a phone number for that witness, and that a police officer had visited the victim to discuss the case in the midst of trial.
 {¶ 23} Defendant now appeals, raising seven assignments of error that we will address in the order presented.
 {¶ 24} "I. The trial court committed prejudicial error by failing to give a jury instruction on the limited use of evidence of appellant's prior conviction."
 {¶ 25} In a criminal case, if requested special instructions to the jury are correct, pertinent and timely presented, they must be included, at least in substance, *Page 8 
in the general charge. State v. Nelson (1973), 36 Ohio St.2d 79, 65, paragraph one of the syllabus.
 {¶ 26} Defendant contends that the trial court erred by denying his request to instruct the jury that it may only consider his prior conviction for purposes of determining the having weapons while under disability charge. The trial court denied his request on the basis that the jury instructions made clear that defendant's stipulation to his prior conviction pertained only to that charge. The trial court reasoned that the limiting instructions concerning the jury's consideration of evidence concerning other acts or prior convictions did not apply. At defendant's request, the trial court did instruct the jury as to his stipulation immediately following the jury instructions on the elements of the having weapons while under disability charge.
 {¶ 27} A prior conviction is a necessary element of the having weapons while under disability charge that the State must prove. R.C. 2923.13(A)(2) and (3).
 {¶ 28} Stipulating to a prior conviction is an acceptable and typical method of proving the prior conviction element of an offense. Id., citing State v. Ward (1999), 130 Ohio App.3d 551, at 559 ("A certified copy of a judgment entry of a prior conviction is not the exclusive method to prove a prior conviction. An offender may, and often does, stipulate to the prior conviction ***.")
 {¶ 29} Defendant stipulated to the prior conviction element of the having weapons while under disability charge. Accordingly, the jury instructions concerning the consideration of "other acts" evidence was not applicable. The trial court *Page 9 
properly instructed the jury as to the fact of defendant's stipulation concerning his prior conviction, which was a necessary element of the having weapons while under disability charge.
 {¶ 30} Assignment of Error I is overruled.
 {¶ 31} "II. The trial court committed prejudicial error by excluding evidence of compilations or summaries of cell phone records offered into evidence by appellant."
 {¶ 32} The defense attempted to introduce into evidence two exhibits, C2 and D2, which it had prepared from the telephone records received under subpoena from Revol Wireless. The defense argued that it had simply reformatted the Revol Wireless information to aid the jury's consideration of it. The State objected to the admission of exhibits prepared by the defense.
 {¶ 33} The custodian of records from Revol Wireless testified that he had prepared exhibits C1 and D1 but not C2 or D2. During his testimony, he briefly compared the documents but could not say with certainty that they contained the same information.
 {¶ 34} The trial court excluded exhibits C2 and D2 but admitted the Revol Wireless documents identified as C1 and D1.
 {¶ 35} Evid. R. 1006 provides:
 {¶ 36} "The contents of voluminous writings, recordings, or photographs, which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for *Page 10 
examination or copying, or both, by other parties at a reasonable time and place. The court may order that they be produced in court."
 {¶ 37} The trial court did not abuse its discretion by excluding the subject exhibits, which were not summaries of voluminous writings. The defense represented that the excluded exhibits were simply a reformatted version of the same information contained in exhibits C1 and D1 that were admitted into evidence. The excluded exhibits were not admissible pursuant to Evid. R. 803(6) because they could not be authenticated.
 {¶ 38} Assignment of Error II is overruled.
 {¶ 39} "III. The trial court committed prejudicial error and violated appellant's rights under the Sixth Amendment to the Constitution of the United States and Article I, Section 10 of the Ohio Constitution by refusing to instruct the jury that, in order to convict appellant of kidnaping or burglary, the jury must unanimously agree that the State has produced proof beyond a reasonable doubt [of] one of the purposes set forth alternatively in the indictment and that the jurors all had to agree which one of the alternatives had been so proven."
 {¶ 40} Here, defendant contends that his constitutional rights were violated because the jury was permitted to convict him of kidnapping and burglary without reaching unanimous agreement as to the nature of the underlying offense elements of these crimes. The Ohio Supreme Court has rejected this argument in State v. Gardner, 118 Ohio St.3d 420,2008-Ohio-2787. In Gardner, the court reasoned as follows: *Page 11 
 {¶ 41} "Although Crim. R. 31(A) requires juror unanimity on each element of the crime, jurors need not agree to a single way by which an element is satisfied. Richardson v. United States (1999), 526 U.S. 813,817. Applying the federal counterpart of Crim. R. 31(A), the Richardson court stated that a `jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime.'
 {¶ 42} The Court acknowledged that "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly, there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.'" Id. at ¶¶ 38-39, quoting Schad v. Arizona (1991),501 U.S. 624, at 631-632, quoting McKoy v. North Carolina (1990), 494 U.S. 433,449.
 {¶ 43} In Gardner, the Ohio Supreme Court held that "Ohio's burglary statutes proscribe a single crime that may be carried out in more than one manner or method. *** The language indicates that the emphasis is on the fact that the defendant had an intent to commit a felony and it does not matter which felony formed the basis of that intent. There are different means of accomplishing this crime, but the different ways do not create a separate and distinct offense." Id. at ¶ 63. Likewise, Ohio's kidnapping statutes proscribe various means of accomplishing the crime. See, also, State v. Gilbert, Cuyahoga App. No. 90615,2009-Ohio-463, ¶ 33, citing State v. McKnight, 107 Ohio St.3d 101,2005-Ohio-6046 ("[n]either the *Page 12 
kidnapping nor the aggravated-robbery instructions were improper, because the alternatives were given to the jury disjunctively.")
 {¶ 44} Assignment of Error III is overruled.
 {¶ 45} "IV. The evidence in support of Count IX (felonious assault) was insufficient as a matter of law."
 {¶ 46} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 47} Defendant contends there was insufficient evidence to convict him of felonious assault under count 9 of the indictment, which required the State to prove that he knowingly caused serious physical harm to another.
 {¶ 48} Defendant contends that the evidence is insufficient to establish "serious physical harm."
 {¶ 49} R.C. 2901.01(A)(5) provides that: "`[S]erious physical harm to persons' means any of the following:
 {¶ 50} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; *Page 13 
 {¶ 51} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 52} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 53} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 54} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 55} This Court has held that "[w]here injuries to the victim are serious enough to cause him or her to seek medical treatment, the finder of fact may reasonably infer that the force exerted on the victim caused serious physical harm as defined by R.C. 2901.01(A)(5)." State v.Lee, Cuyahoga App. No. 82326, 2003-Ohio-5640, ¶ 24, citing State v.Wilson (Sept. 21, 2000), Cuyahoga App. No. 77115.
 {¶ 56} In this case, the evidence reflects that the victim was taken to the hospital, where she received stitches. Witnesses observed Tracy's injuries and testified that she was bleeding. Tracy said the defendant hit her twice in the head causing her to bleed. There was sufficient evidence to satisfy the element of serious physical harm. The trial court did not err by denying defendant's motion for acquittal on the felonious assault charge under R.C. 2903.11(A)(1).
 {¶ 57} Assignment of Error IV is overruled.
 {¶ 58} "V. The judgment of conviction and sentence is against the manifest weight of the evidence." *Page 14 
 {¶ 59} To warrant reversal from a verdict under a manifest weight of the evidence claim, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 60} Defendant believes all of his convictions were against the manifest weight of the evidence because: he denied committing any crimes, he believes Tracy and Terry conspired to falsely accuse him because Tracy was jealous of defendant's relationship with other women and wanted to get him out of the way.
 {¶ 61} Defendant primarily points to the discrepancies in Tracy's testimony that were drawn out on cross-examination. Notwithstanding, the jury heard the testimony and resolved the conflicts appropriately and within its province, finding defendant guilty of some charges and acquitting him of others. The jury's verdict is supported by the record and defendant's convictions did not result in a manifest miscarriage of justice. Further, the State did corroborate the fact of the victim's injuries that were sustained on June 12, 2007 through the testimony of law enforcement officers that responded to the scene.
 {¶ 62} Assignment of Error V is overruled.
 {¶ 63} "VI. The trial court committed prejudicial error in denying appellant's motion for new trial which demonstrated: (i) misconduct of the prosecuting attorney in failing to disclose material exculpatory evidence to appellant, i.e., the name and *Page 15 
address of a witness who was present at the time of the alleged offenses whose testimony would have directly contradicted the testimony of the State's two key witnesses to the alleged offenses; (ii) the existence of newly discovered evidence, to wit: the existence of a romantic relationship between the victim and a police officer, which not only contradicts and undermines testimony given by the victim at trial, but provides a motive for the victim to falsely accuse appellant of committing the offenses charged in the indictment; and (iii) the withholding of exculpatory evidence by the State."
 {¶ 64} We apply the abuse of discretion standard of review to a trial court's denial of a motion for new trial. State v. Houston, Cuyahoga App. No. 90780, 2009-Ohio-224, ¶ 19.
 {¶ 65} Defendant asserts he was entitled to a new trial under both Crim. R. 33(A)(2) and (A)(6), which provide:
 {¶ 66} "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 {¶ 67} "***
 {¶ 68} "(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
 {¶ 69} "***
 {¶ 70} "(6) When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered *Page 16 
evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses."
 {¶ 71} Defendant maintains that the prosecution failed to turn over information favorable to the defense, namely, the correct name of a potential witness and also by failing to disclose her telephone number. This, he maintains, was a willful violation of Crim. R. 16 meriting reversal. He also cites to newly discovered evidence as an additional ground for meriting a new trial.
 {¶ 72} The State identified among its witness a "Tabitha Laier." No address was provided. Defendant alleges that the State became aware sometime prior to trial that this witness's name was "Tabitha Scales-Lanier" and maintains the State had "several conversations" with this witness prior to trial. According to defendant, this witness would have contradicted the testimony of the other eyewitnesses.
 {¶ 73} Defendant asserts this witness would have disclosed Tracy's alleged relationship with a Cleveland Police Officer, supplying an apparent motive to get defendant out of her life and further undermining Tracy's claims that she could not get anyone from the police department to help her. Defendant also speculates that this was the officer who was permitted to visit Tracy in the holding cell in the middle of trial. *Page 17 
 {¶ 74} The State refutes defendant's claims and refers to Scales-Lanier's affidavit wherein she indicated she never spoke to the prosecutor regarding this case. The State maintained it did not know where the witness lived and that it identified the witness by the name the victim supplied to them.
 {¶ 75} The prosecutors submitted affidavits indicating that they turned over the witness's name, which had been received from the victim, and that they made the victim available for questioning by the defense at the pretrial. The prosecutors attempted to contact the witness without success. The prosecutors maintained that they believed the witness's name to be "Tabitha Laier."
 {¶ 76} The State left messages for the witness on a cell phone. The witness returned one call and left a message that she could not attend the trial. Although the State left a second message attempting to secure the witness's attendance on the following day, the witness did not return that call. This undermines defendant's suspicions that the State was attempting to keep this witness away from the trial.
 {¶ 77} Finally, the State avers that the officer who visited Tracy in the holding cell was her relative, Officer Alim, and not the police officer who she was allegedly dating. This fact is confirmed by the trial court's explanation of the visit to the defense on the record during trial.
 {¶ 78} There is no evidence to support defendant's contention that Scales-Lanier was purposely kept away from the courtroom or made unavailable to the defense. *Page 18 
 {¶ 79} Considering the totality of the circumstances and the record, the trial court did not abuse its discretion by denying defendant's motion for new trial under Crim. R. 33(A)(2) and (6).
 {¶ 80} Assignment of Error VI is overruled.
 {¶ 81} "VII. Appellant's convictions for felonious assault under Counts IX and X, allied offenses of similar import, both of which involved the same victim and arose from the same conduct, are improper under Ohio Rev. Code § 2941.25 and constitute plain error."
 {¶ 82} Defendant maintains his convictions for felonious assault by means of causing serious physical harm (R.C. 2903.12(A)(1)) and his separate conviction for felonious assault by means of causing or attempting to cause harm to another by means of a deadly weapon (R.C. 2903.12(A)(2)) are allied offenses of similar import. The evidence included that defendant hit the victim in the head with a gun, causing injury to her.
 {¶ 83} This Court has held "[i]t is plain error to impose multiple sentences for allied offenses of similar import, even if the sentences are run concurrently." State v. Whitfield, Cuyahoga App. No. 90244,2008-Ohio-3150, ¶ 37, discretionary appeal allowed by State v.Whitfield, 120 Ohio St.3d 1486, 2009-Ohio-278, citing State v.Sullivan, Cuyahoga App. No. 82816, 2003-Ohio-5930.
 {¶ 84} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find *Page 19 
an exact alignment of the elements. Instead, if in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in the commission of the other, then the offenses are allied offenses of similar import." State v. Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625, paragraph one of the syllabus. Subsequently, the Ohio Supreme Court analyzed whether aggravated assault under R.C. 2903.12(A)(1) and (A)(2) constituted allied offenses of similar import when the offenses result from a single act undertaken with a single animus. State v. Brown,119 Ohio St.3d 447, 2008-Ohio-4569, ¶¶ 37-40. The court noted that subdivisions (1) and (2) "set forth two means of committing the offense — causing serious physical harm to another, or causing or attempting to cause physical harm by means of a deadly weapon or dangerous ordnance." Id. at 39. The court concluded that each subdivision provided different forms of the same offense, "in each of which the legislature manifested its intent to serve the same interest — preventing physical harm to persons." Id.
 {¶ 85} In Brown, the Ohio Supreme Court concluded that "the General Assembly did not intend violations of R.C. 2903.11(A)(1) and (A)(2) to be separately punishable when the offenses result from a single act undertaken with a single animus." Id. at 40.
 {¶ 86} The provisions of R.C. 2903.11(A)(1) and (A)(2) are substantially similar to those analyzed by the court in Brown. This Court has previously determined that convictions under these subdivisions are allied offenses of similar import, where *Page 20 
there is a single animus. State v. Goldsmith, Cuyahoga App. No. 90617, 2008-Ohio-5990, ¶ 37 (holding "felonious assault pursuant to R.C. 2903.11(A)(1) and R.C. 2903.11(A)(2) are allied offenses of similar import *** because Goldsmith fired multiple shots at one victim in rapid succession and did not have a separate animus for each count of felonious assault"). In this case, the two counts of felonious assault are likewise allied offenses, where the evidence establishes a single animus concerning the assault of a single victim. Accordingly, defendant's convictions should be merged.
 {¶ 87} Assignment of Error VII is sustained.
 {¶ 88} Judgment affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
It is ordered that appellant and appellee shall each pay their respective costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. Case remanded to the trial court for further proceedings.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J., CONCURS MARY J. BOYLE, J., CONCURS *Page 21 
IN JUDGMENT ONLY.
[1] A felony of the fourth degree in violation of R.C. 2911.12(A)(4), count 5.
[2] A felony of the first degree in violation of R.C. 2905.01(A)(2) and (A)(3), count 8.
[3] Felonies of the second degree in violation of R.C. 2903.11(A)(1) and (A)(2), counts 9 and 10.
[4] A felony of the third degree in violation of R.C. 2923.13(A)(2), count 13. *Page 1