[Cite as *State v. Leigh*, 2013-Ohio-3243.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99181**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## AUSBURN LEIGH

DEFENDANT-APPELLANT

### JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-556762 and CR-556285

**BEFORE:**   S. Gallagher, P.J., Blackmon, J., and McCormack, J.

**RELEASED AND JOURNALIZED:**   July 25, 2013

**ATTORNEY FOR APPELLANT**

Ronald A. Skingle
2450 St. Clair Avenue
Cleveland, OH   44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Brian M. McDonough
Assistant Prosecuting Attorney
Justice Center - 8th Floor
1200 Ontario Street
Cleveland, OH    44113

SEAN C. GALLAGHER, P.J.:

{¶1} Defendant-appellant Ausburn Leigh appeals from his conviction for felonious assault. For the following reasons, we affirm.

{¶2} The victim testified that in the early morning of November 18, 2011, she went to a home located on West 46th Street to obtain heroin. Several people were in the home at the time, including Leigh and Nereida Rosario. According to the victim, Leigh approached her and took her belongings to cover the $20 she owed him for a prior heroin purchase. After obtaining heroin from another drug dealer at the house, the victim pleaded with Leigh to return her belongings. Leigh responded by calling her a "snitch" because he suspected the victim was the informant underlying a raid at his home on November 2, 2011. While the victim was crying and sitting "Indian-style" on the living room floor, Leigh, who was six feet three inches tall and weighed 240 pounds, struck her on the left side of her face with his right open hand.

{¶3} When questioned on direct examination how she felt after Leigh struck her, the victim testified:

> A. I kind of saw stars a little bit. Not really stars, but it really shook my whole head and it took me aback and it split my nose open. I had blood all over my face.
>
> Q. Did it hurt?
>
> A. It hurt very badly.

Tr. 454: 4-9. The victim testified further that she left the home and walked over to a friend's gas station located at the intersection of Fulton Road and Denison Avenue. A

police officer in the area approached the victim and asked her to explain what happened to her. The victim testified that Leigh assaulted her and as a result of the assault, she sustained a laceration on her nose, bruises on her left eye, and fractures to several facial bones.

{¶4} The state also presented the testimony of the two police officers who responded to the alleged assault, Michael Billet and Frank Ambrose. The officers received a call about the alleged assault at 10:13 a.m. Billett testified that he approached the victim at the gas station because she was upset and crying, and had cuts on her nose and left cheek. The cut on her nose was bleeding, and her face was swollen.

{¶5} The police officers took the victim back to the home on West 46th Street. They arrested Leigh but could not locate any other eyewitness to the alleged assault. The officers then took the victim to MetroHealth for examination and treatment.

{¶6} A CT scan showed the victim had facial and orbital fractures. Specifically, she had a left maxillary sinus anterior wall fracture and a minimally displaced left orbital floor fracture. Her medical report documented a laceration to the bridge of her nose, with the bleeding controlled; an abrasion on the left side of her face, with no bleeding; and positive swelling to her left maxilla. The report also indicated that the victim did not lose consciousness, but she had a headache and some dizziness. Her pain was moderate and constant in severity.

{¶7} Rosario also testified on behalf of the state. She identified herself as Leigh's former girlfriend, and a high school acquaintance of the victim. Rosario

admitted to being with Leigh at the home on West 46th Street when the victim arrived there on November 18, 2011. Rosario testified that she saw Leigh strike the victim once in the face with an open hand, resulting in a cut to the victim's nose. According to Rosario, the victim did not have any bruising or other injuries to her left cheek or eye following the incident.

{¶8} Rosario testified further that the victim then begged another drug dealer in the home for some heroin. The victim "shot up" and left the home to engage in prostitution in order to repay Leigh the $20 owed to him. According to Rosario, the victim appeared fine, and was not crying when she left the home.

{¶9} The state submitted into evidence two photographs of the victim's injuries. It also submitted into evidence her medical records from MetroHealth.

{¶10} The Cuyahoga County Grand Jury issued a seven-count indictment against Leigh as a result of the November 18, 2011 incident. The charges were as follows: Count 1, kidnapping in violation of R.C. 2905.01(A)(4); Count 2, rape in violation of R.C. 2907.02(A)(2); Count 3, felonious assault in violation of R.C. 2903.11(A)(1); Count 4, aggravated robbery in violation of R.C. 2911.01(A)(3); Count 5, theft in violation of R.C. 2913.02(A)(1); Count 6, theft in violation of R.C. 2913.02(A)(1); and Count 7, intimidation of a crime victim in violation of R.C. 2921.04(B).

{¶11} A jury trial commenced on September 26, 2012. After the state's case, Leigh made a motion for acquittal. The trial court denied the motion except as to Count 7, intimidation of a victim. The jury subsequently returned a guilty verdict on Count 3,

felonious assault.   The jury found Leigh not guilty on the remaining counts.   The trial court sentenced Leigh to a term of eight years for the felonious assault.

{¶12} This appeal followed.   In one assignment of error, Leigh challenges the sufficiency of the evidence supporting his guilt.   Specifically, Leigh argues the state failed to present any expert medical testimony at trial to prove beyond a reasonable doubt that the victim's facial and orbital fractures were the proximate result of Leigh slapping her once with an open hand.   In other words, causation under the circumstances was sufficiently complex to be beyond the knowledge and experience of the jury.

{¶13} The test as stated in *Thompkins* for judging the sufficiency of the evidence is as follows: "'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law."   *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).   Verdicts not supported by sufficient evidence violate a defendant's due process rights.   *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶14} When there is conflicting evidence "it [is] the function of the jury to weigh the evidence and assess the credibility of the witnesses in arriving at its verdict."   *State v. Jenks*, 61 Ohio St.3d 259, 279, 574 N.E.2d 492 (1991).   "It is not the function of an appellate court to substitute its judgment for that of the fact finder."   *Id*.   It is the jurors' minds that must be convinced rather than the reviewing court.   *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982).

{¶15} A court reviewing the sufficiency of the evidence must consider the totality of all the evidence, construing all the evidence in the light most favorable to the prosecution. *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). The mere existence of conflicting evidence cannot make the evidence insufficient as a matter of law. *Id.*

{¶16} In this case, Leigh claims the state failed to provide expert medical testimony as to the cause of the victim's facial or orbital fractures and, therefore, failed to prove felonious assault. The jury convicted Leigh of felonious assault in violation of R.C. 2903.11(A)(1), which provides in pertinent part, "[n]o person shall knowingly * * *[c]ause serious physical harm to another." "Serious physical harm," in turn is defined as any of the following:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5). This court has previously determined that "[t]he degree of harm that rises to the level of 'serious' physical harm is not an exact science, particularly when the definition includes such terms as 'substantial,' 'temporary,' 'acute,' and 'prolonged.'" *State v. Miller*, 8th Dist. No. 98574,

2013-Ohio-1651, _ 18, citing *State v. Irwin*, 7th Dist. No. 06 MA 20, 2007-Ohio-4996, ¶ 37. In *Miller,* the victim was knocked unconscious from a blow to the head that caused both a laceration requiring stitches and a skull fracture. Upon those facts, this court determined that there was sufficient evidence of serious physical harm to sustain the defendant's conviction. *Id.* at _ 23.

{¶17} After construing the facts of this case in a light most favorable to the prosecution, we conclude the evidence is legally sufficient to support Leigh's felonious assault conviction. The victim testified that as a result of the blow to her face administered by Leigh, she sought treatment at the hospital for facial and orbital fractures, a laceration to the bridge of her nose, an abrasion on the left side of her face, and positive swelling to her left maxilla. The evidence also indicated that although the victim did not lose consciousness, she had a headache and some lingering dizziness. Her pain was moderate and constant in severity. Upon similar facts, this court has consistently found that sufficient evidence supported the jury's conclusion that serious physical harm occurred as a result of the assault. *See, e.g., State v. Melendez*, 8th Dist. No. 97175, 2012-Ohio-2385 (finding the sufficiency of the evidence established that the victim suffered serious physical harm as she experienced severe head and shoulder pain and had a one centimeter laceration over her right eye); *State v. Rogers*, 8th Dist. No. 91380, 2009-Ohio-2252 (finding the fact that the victim required stitches to arrest the bleeding from the laceration caused by the assault was sufficient evidence of serious physical harm).

**{¶18}** Leigh's singular argument on appeal is that the state was required to introduce medical evidence establishing that the assault proximately caused the victim's injuries. Apparently, Leigh's defense theory is that he could not have caused all the injuries from a single "slap" to the victim's face. When construing the evidence in a light favorable for the prosecution, the victim's testimony alone establishes the causal connection between the assault and her injuries diagnosed at the hospital shortly after the assault. In this case, no further evidence is needed to determine that the jury's verdict is supported by the sufficiency of the evidence. The victim's credibility regarding the cause of her injuries was well within the province of the jury's determination.

**{¶19}** Because of the foregoing analysis, Leigh's assignment of error is overruled.

**{¶20}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
TIM McCORMACK, J., CONCUR