[Cite as *Dunbar v. State*, 2012-Ohio-707.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97364**

## LANG DUNBAR

PLAINTIFF-APPELLEE

vs.

## STATE OF OHIO

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-734290

**BEFORE:** Cooney, J., Blackmon, A.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:** February 23, 2012

**ATTORNEYS FOR APPELLANT**

William D. Mason
Cuyahoga County Prosecutor

Michael A. Dolan
Assistant County Prosecutor
Justice Center
1200 Ontario St., 8th Floor
Cleveland, OH 44113


**ATTORNEY FOR APPELLEE**

Terry H. Gilbert
Friedman & Gilbert
1370 Ontario Street
Suite 600
Cleveland, Ohio 44113-1752

COLLEEN CONWAY COONEY, J.:

{¶1} Defendant-appellant, the state of Ohio ("the State"), appeals the trial court's determination that plaintiff-appellee, Lang Dunbar ("Dunbar"), was a "wrongfully imprisoned individual" pursuant to R.C. 2743.48. We find no merit to the appeal and affirm.

{¶2} The facts giving rise to this declaratory judgment action are not in dispute. On November 7, 2004, Dunbar struck his live-in fiancée, Davida Moore ("Moore"), in the face and head. He also twisted her legs and kicked her. Immediately following the incident, Dunbar became remorseful, apologized, and instructed Moore not to leave the house or answer the door.

{¶3} On November 20, 2004, Moore filed a complaint against Dunbar with the Cleveland police, and Dunbar was subsequently charged with domestic violence. Dunbar pled no contest to the domestic violence charge in Cleveland Municipal Court, and the court sentenced him to 180 days in jail.

{¶4} While Dunbar was serving his jail sentence, the Cuyahoga County Grand Jury indicted him on three counts of abduction and one count of domestic violence arising from the same November 7, 2004 incident. Dunbar negotiated a plea agreement wherein he agreed to plead guilty to one count of abduction in exchange for community control sanctions. The court accepted the plea with full knowledge of its terms but nevertheless imposed a two-year sentence. On appeal, this court found that Dunbar knowingly, intelligently, and voluntarily entered into the plea agreement and pled guilty in accordance with its terms. However, this court determined that the trial court erred in imposing a prison sentence in contravention of the plea agreement without affording Dunbar the opportunity to withdraw his plea. *State v. Dunbar*, 8th Dist. No. 87317, 2007-Ohio-3261, ¶ 141 (*"Dunbar I"*). Therefore, we directed that his plea be vacated. *Id.* at ¶ 193.

{¶5} On remand, a jury convicted Dunbar of one count of abduction, and the court sentenced him to a five-year prison term.[1] This court again reversed Dunbar's conviction, this time because it found there was insufficient evidence to support the conviction. *State v. Dunbar*, 8th Dist. No. 92262, 2010-Ohio-239, ¶ 30 (*"Dunbar II"*).

{¶6} In our opinion in *Dunbar II*, we recounted Moore's testimony that after the domestic violence incident, Dunbar told her not to leave the house or answer the door "because of the way [her] face looked." Moore stated that during the relevant time period, Dunbar never threatened her, was not violent toward her, but instead, repeated ly apologized for the incident. Moore further testified that, during the relevant time period, Dunbar left her alone in the house for extended periods of time. Because there was no evidence that Dunbar locked Moore in the

---

[1]Dunbar had been in prison for more than two years when the jury trial commenced in September 2008.

house each time he left, this court concluded that Moore had the opportunity to leave or summon help, and thus there was insufficient evidence to support the abduction conviction. Dunbar was subsequently ordered discharged from prison.

{¶7} On August 16, 2010, Dunbar filed the instant case seeking a declaration that he was a "wrongfully imprisoned individual" pursuant to R.C. 2743.48(A). This determination is a prerequisite for filing a claim for damages against the State in the Court of Claims. R.C. 2743.48(D). The parties submitted cross-motions for summary judgment. The trial court granted Dunbar's motion for summary judgment, declared him a "wrongfully imprisoned individual," and denied the State's motion for summary judgment. The State now appeals, raising two assignments of error.

{¶8} In its first assignment of error, the State argues the trial court erred in granting Dunbar's motion for summary judgment and declaring him a "wrongfully imprisoned individual." The State contends that Dunbar's initial guilty plea to the abduction charge precludes him from qualifying as a "wrongfully imprisoned individual." In its second assignment of error, the State argues the trial court erred in denying its motion for summary judgment because Dunbar failed to prove his innocence by a preponderance of the evidence. We address these two assigned errors together because they are interrelated.

{¶9} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one

conclusion, that conclusion being adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998), citing *Horton v. Harwick Chem. Corp.,* 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus.

{¶10} Prior to filing suit in the Court of Claims for damages for wrongful imprisonment, a petitioner must obtain a declaratory judgment in the court of common pleas certifying that the petitioner was a "wrongfully imprisoned individual." R.C. 2743.48. To obtain the declaratory judgment, the petitioner must establish that: (1) he was convicted of a felony; (2) he was sentenced to prison for that conviction; (3) the conviction was vacated, dismissed, or reversed; (4) no further prosecution was attempted or allowed for that conviction or any act associated with that conviction; and (5) the offense of which the petitioner was found guilty was not committed by the petitioner or was not committed at all. *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 701 N.E.2d 1002 (1998); R.C. 2305.02; R.C. 2743.48(A).

{¶11} However, the petitioner seeking to establish a claim for wrongful imprisonment must produce more evidence than a judgment of acquittal, which is merely a judicial finding that the state did not prove its case beyond a reasonable doubt. *Ellis v. State*, 64 Ohio St.3d 391, 393, 596 N.E.2d 428 (1992), citing *Walden v. State*, 47 Ohio St.3d 47, 547 N.E.2d 962 (1989). The wrongful imprisonment statutes were intended to compensate the innocent for wrongful imprisonment. They are not intended to compensate those who have merely avoided criminal liability. *Walden* at 52; *Gover v. State*, 67 Ohio St.3d 93, 95, 616 N.E.2d 207 (1993). The petitioner carries the burden of proof in affirmatively establishing his or her innocence, by a preponderance of the evidence, under R.C. 2743.48(A)(5).

{¶12} The State argues that by entering a guilty plea in his first prosecution, Dunbar forfeited any ability to petition for wrongful imprisonment status. In support of its argument, the State emphasizes the fact that R.C. 2743.48(A)(2) requires that the petitioner be "found guilty of, but did not plead guilty to, the particular charge." Dunbar, on the other hand, argues that because his guilty plea was vacated by this court, it cannot bar his right to present a claim for wrongful imprisonment.

{¶13} In *State v. Moore*, 165 Ohio App.3d 538, 2006-Ohio-114, 847 N.E.2d 452 (4th Dist.), the appellate court was confronted with the same issue presented here. Moore pled guilty to murder in 1995. His counsel had failed to inform him that the state's gunshot-residue tests showed that Moore tested negative for gunshot residue and that another person, Lisa Mullett, tested positive for gunshot residue. On advice of counsel and without knowledge of the gunshot-residue tests, Moore pled guilty and was sentenced to 15 years to life in prison. When Moore learned about the tests, he filed a motion for postconviction relief and a motion to withdraw his guilty plea. The trial court granted the motion, finding that he did not receive the effective assistance of counsel and that he did not knowingly, intelligently, and voluntarily enter his plea.

{¶14} Moore's case proceeded to trial in July 2004. Two witnesses testified that the gunshot-residue tests indicated that Mullett, not Moore, had fired the gun. Additionally, two other witnesses testified that they had overheard Mullett admit that she committed the murder. The jury found Moore not guilty.

{¶15} In August 2004, Moore filed a wrongful imprisonment claim under R.C. 2743.48. Based on the transcript and exhibits from Moore's criminal trial, the court issued a judgment

entry declaring Moore a "wrongfully imprisoned individual." The state appealed, arguing that the Moore could not be declared a "wrongfully imprisoned individual" because he had previously pled guilty to the charge for which he was imprisoned. In affirming the trial court's judgment, the *Moore* court explained that because his guilty plea was void, it carried no force or effect at law. *Id.*, 165 Ohio App.3d 538, 2006-Ohio-114, 847 N.E.2d 452, ¶ 22, (4th Dist.). The *Moore* court further explained:

> R.C. 2743.48 is ambiguous to the extent that it does not explicitly state whether only valid guilty pleas will preclude recovery, or whether guilty pleas that are void will also preclude recovery. R.C. 2743.48's purpose of redressing existing wrongs would not be served by withholding relief from individuals who were wrongfully induced to enter a guilty plea. The narrowest interpretation of R.C. 2743.48, which would preclude recovery even if the guilty plea is nugatory and has no effect at law, would thwart the remedial goals of the statute. On the other hand, interpreting R.C. 2743.48 liberally would result in assuring that a plea that has been determined to have no legal effect does not, in fact, have any legal effect upon either the criminal or civil matters associated with the case. This would further the remedial goals of the statute by addressing the particularly egregious wrong of imprisoning an individual not only wrongfully, but also unconstitutionally. *Id.* at ¶ 23.

**{¶16}** We agree with this liberal construction of R.C. 2743.48. Because a void guilty plea has no effect at law, it does not exist for purposes of determining whether a person has the right to seek compensation under R.C. 2743.48.

**{¶17}** In the instant case, this court vacated Dunbar's guilty plea because the trial court failed to abide by the parties' plea agreement, which it had approved, without advising Dunbar that it might impose a prison sentence in contravention of the plea agreement. This court explained that "'[w]here a sentence recommendation is an integral part of a plea agreement, the failure to inform the defendant of potential changes may result in a plea that was not entered into knowingly, voluntarily, or intelligently.'" *Dunbar I*, 8th Dist. No. 87317, 2007-Ohio-3261, at

¶ 139, quoting *State v. Algood*, 9th Dist. Nos. 90CA004903, 90CA004904, 90CA004905 1991 WL 116269 (June 19, 1991). Thus, when the trial court decided to deviate from the plea agreement, it should have clearly advised Dunbar of its intention, and allowed him to reconsider his plea. *Id*. at ¶ 140. Without knowledge that the court might impose a prison sentence, Dunbar's plea was not entered knowingly, voluntarily, and intelligently, was void, and therefore, does not preclude his wrongful imprisonment claim.

{¶18} The State also argues that Dunbar's contemporaneous criminal conduct prevents him from qualifying as a "wrongfully imprisoned individual" under R.C. 2743.48. In *Gover*, 67 Ohio St.3d 93, 616 N.E.2d 207, the Ohio Supreme Court explained that R.C. 2743.48 "is intended to filter out those claimants who have had their convictions reversed, but were committing a different offense at the time that they were engaging in the activity for which they were initially charged." *Id.* at 95. For that reason, the "requirement that 'no criminal proceeding * * * can be brought * * * against an individual for any act associated with that conviction' is of critical importance." *Id*.

{¶19} Gover filed a wrongful imprisonment claim after his safecracking conviction was reversed. The safecracking charge was brought against him after a glass window in a restaurant had been broken and Gover, who was observed leaving the scene, possessed objects stolen from the safe when he was arrested a short time later. On appeal, the court reversed his conviction because Gover had not removed the items from a safe. The Ohio Supreme Court remanded the wrongful imprisonment case to the trial court because the record was "devoid of any evidence that the trial court considered whether [Gover] committed other offenses." Because Gover could

be subject to further prosecution for other crimes arising from the same incident, the Supreme Court refused to declare him a "wrongfully imprisoned individual."

{¶20} Dunbar committed the domestic violence offense before the actions involving the alleged abduction and had completed his sentence for the domestic violence conviction before the abduction conviction arose. Once someone completes a prison sentence and has "served his debt to society," he is entitled to freedom. *State v. Bradley*, 8th Dist. No. 79094, 2002-Ohio-3540, ¶ 10. Once Dunbar completed his sentence for domestic violence, any additional prison time he served for a crime he did not commit constituted wrongful imprisonment, because no further criminal prosecution could be brought against him.

{¶21} The State also argues that the court erred by not requiring Dunbar to prove his innocence by a preponderance of the evidence. As previously noted, to qualify as a "wrongfully imprisoned individual" under R.C. 2743.48, the petitioner must not only be acquitted of the crime for which he was imprisoned, but he must also prove his innocence by a preponderance of the evidence. *Walden*, 47 Ohio St.3d at 52, 547 N.E.2d 962.

{¶22} The State suggests that the evidence in the record is insufficient to establish Dunbar's innocence by a preponderance of the evidence. As previously mentioned, a petitioner seeking to establish a claim for wrongful imprisonment must produce more evidence than a judgment of acquittal, which is simply a judicial finding that the State did not prove its case beyond a reasonable doubt. *Ellis*, 64 Ohio St.3d at 393, 596 N.E.2d 428. Hence, the State asserts: "the very same transcript of a criminal proceeding which results in a conviction and which is subsequently overturned on the weight or sufficiency of the evidence may nonetheless be insufficient to support a claimant's innocence by a preponderance of the evidence." *Moore,*

165 Ohio App.3d at 543, 2006-Ohio-114, 847 N.E.2d 452 (4th Dist.), citing *Chandler v. State*, 95 Ohio App.3d 142, 149, 641 N.E.2d 1382 (8th Dist.1994). However, implicit in that statement is the idea that the record may well be sufficient, depending on the facts of the case.

**{¶23}** This court recently upheld the trial court's grant of summary judgment in an analogous case. *See Doss v. State*, 8th Dist. No. 96452, 2011-Ohio-6429. In *Doss*, we found the uncontradicted evidence in the record supported Doss's motion under R.C. 2743.48(A). *Id.* at ¶ 17.

**{¶24}** In the instant case, the trial court relied on the facts set forth in *Dunbar II,* 8th Dist. No. 92262, 2010-Ohio-239, when it found that Dunbar met his burden of proving his innocence. In *Dunbar II*, this court found there was insufficient evidence to support Dunbar's abduction conviction because the victim testified that Dunbar never restrained her but left for long periods of time during which she was free to leave the house. R.C. 2905.02(A)(2), which governs abduction, states that "[n]o person shall * * * [b]y force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear." "Fear" is defined as "a distressing emotion aroused by impending danger." *Websters Unabridged Dictionary* 1960 (2d Ed.1998).

**{¶25}** The State suggests that the trial court's reliance on *Dunbar II* was improper and that the record is otherwise devoid of any evidence proving his innocence. However, an appellate court may take judicial notice of a court's finding in another case. *Kirshner v. Shinaberry*, 64 Ohio App.3d 536, 582 N.E.2d 22 (6th Dist.1989). *See also In re Lassiter*, 101 Ohio App.3d 367, 374, 655 N.E.2d 781 (2d Dist.1995). This rule comports with other doctrines in Ohio jurisprudence such as collateral estoppel and law of the case, which are intended to avoid

the possibility of inconsistent results and preserve the integrity of the courts. Accordingly, the trial court could rely on the facts established in *Dunbar II* to find that Dunbar proved his innocence by a preponderance of the evidence.

**{¶26}** Accordingly, we overrule both assignments of error.

**{¶27}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


PATRICIA A. BLACKMON, A.J., and JAMES J. SWEENEY, J., CONCUR