[Cite as *Houston v. State*, 2012-Ohio-4404.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 98118

---

## DARRELL HOUSTON

### PLAINTIFF-APPELLEE

vs.

## STATE OF OHIO

### DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-735702

**BEFORE:**    Kilbane, J., Stewart, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:**    September 27, 2012

**ATTORNEYS FOR APPELLANT**

William D. Mason
Cuyahoga County Prosecutor
Michael A. Dolan
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Mark E. Porter
David B. Gallup
Gallup & Burns
The Leader Building - Suite 810
526 Superior Avenue, East
Cleveland, Ohio 44114-1401

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, the state of Ohio ("State"), appeals the trial court's decision granting summary judgment in favor of plaintiff-appellee, Darrell Houston ("Houston"), which declared Houston to be a wrongfully imprisoned individual under R.C. 2743.48. Finding no merit to the appeal, we affirm.

{¶2} In October 1991, Houston was charged with aggravated murder with prior calculation and design, aggravated murder, and aggravated robbery, with each count carrying firearm specifications. Houston was also charged with having a weapon while under disability. The charges arose from the murder of Said Ali ("Ali"), the owner of Sam & Rose Deli in Cleveland, Ohio. The two aggravated murder and aggravated robbery charges proceeded to a jury trial.[1] The having a weapon while under disability charge proceeded to the bench, with the understanding that Houston would plead guilty to the weapons charge if the jury first found him guilty of at least one of the other charges.

{¶3} The facts presented at trial were previously set forth by this court in Houston's most recent appeal, *State v. Houston*, 8th Dist. No. 90780, 2009-Ohio-224, *discretionary appeal not accepted*, 122 Ohio St.3d 1410, 2009-Ohio-2751, 907 N.E.2d 119:

---

[1]On the third day of trial, the trial court granted the State's request to dismiss the aggravated murder count with prior calculation and design charge.

The facts offered at Houston's 1992 trial showed that a witness named James Pope ["Pope"] testified that he worked at a convenience store in September 1991. Pope said that he had been in the basement of the store when he heard a gunshot. He thought the store owner [Ali] had accidently discharged a firearm, but when he came up the stairs, he surprised a gun-wielding robber and saw the store owner slumping behind the register with a gunshot wound to the head. The robber saw Pope and ordered him to open the cash register, warning him that "[y]ou'll be looking just like [the store owner] if you don't open up." Frightened, Pope fumbled with the cash register and pleaded for his life. The robber said, "I am not going to shoot you, Boo."

Pope told the police that the robber looked like Houston, a man he knew by the names of "Darrell" and "Dee." Pope agreed that he knew Houston "fairly well" because he had gone to Houston's house to cut his hair. Pope gave the police a description of the shooter and the clothes that the shooter had been wearing. He specifically recalled telling the police that the shooter had a mark on the right side of his face, although he conceded that his written statement did not include that fact. A bystander near the store who did not see the shooter's face corroborated Pope's description of the shooter's jacket, hooded sweatshirt and shoes. The police confirmed "Dee" as being Houston, and Pope positively identified Houston as the shooter from a photograph. Pope then requested a face-to-face identification with Houston and confirmed that Houston's clothing matched that of the shooter. The police were unable to recover any fingerprints or other physical evidence from the scene, although they were able to confirm the presence of gunshot residue on the sleeves of Houston's jacket.

[In October 1991, which was about] a month after the shooting, Pope called the police to say that he had been at a Halloween party and saw a person who looked like the robber. [Pope told the police that he believed the shooter was a man known to him as "Popeye."] The police investigated Pope's new assertion, but were unable to find a person who matched the description of the robber.

Pope testified [at trial] that Houston was not the shooter because "I don't see the mark on the right side of his face." He agreed that other than the mark, Houston was identical to the person who robbed the store and shot the store owner. Pope said that the person he saw at the Halloween party not long after the robbery was definitely the robber because "I remember seeing the same mark on his face that I seen the guy with the mark there. That's what made me change my mind that it wasn't Darrell." Even so,

when asked "[d]oes that person that you saw on Halloween fit the same description as the description of Darrell Houston," Pope answered, "[e]xactly."[2]   *Id.* at ¶ 2-5.

**{¶4}** The jury found Houston guilty of aggravated murder, aggravated robbery, and the accompanying firearm specifications. Pursuant to the pretrial stipulation regarding the contingent plea, Houston pled guilty to having a weapon while under disability. The trial court sentenced Houston to an aggregate of 33 years to life in prison.

**{¶5}** Houston then filed a direct appeal to this court, raising issues relating to the weight and sufficiency of the evidence. He argued that the trial court abused its discretion by admitting evidence of his identity as the perpetrator and by admitting certain expert testimony. We rejected these assertions and affirmed the conviction in *State v. Houston*, 8th Dist. No. 64574, 1994 Ohio App. LEXIS 52 (Jan. 13, 1994). The Ohio Supreme Court did not accept this appeal in *State v. Houston*, 69 Ohio St.3d 1478, 634 N.E.2d 1024 (1994).

**{¶6}** In 1995, Houston filed an application for reopening his appeal under App.R. 26(B) in *State v. Houston*, 8th Dist. No. 64574, 1994 Ohio App. LEXIS 52 (Jan. 13, 1994), *reopening disallowed*, Motion No. 259344 (Feb. 15, 1995). Houston claimed that appellate counsel had been ineffective by failing to argue that trial counsel violated

---

[2]In a subsequent affidavit by Pope, attached to Houston's 2003 motion for a new trial, Pope stated that: "I lied to the * * * Assistant Prosecuting Attorneys and the jury when I said that I was positive that [Houston] is the same male I observed in the store with the gun * * *."

an essential duty by not having subpoenaed witnesses present to testify at trial. We rejected these arguments as untimely and further noted that they could have been raised on direct appeal. The Ohio Supreme Court affirmed, holding that Houston failed to show good cause for his untimely filing of the application for reopening in *State v. Houston*, 73 Ohio St.3d 346, 1995-Ohio-317, 652 N.E.2d 1018.

**{¶7}** Houston then filed a petition for a writ of habeas corpus in federal court, again raising trial counsel's ineffectiveness and claiming that the State failed to present sufficient evidence of his guilt. The district court denied the petition, finding that Houston procedurally defaulted the ineffective assistance of appellate counsel claim and that the evidence at trial was sufficient for a rational jury to find Houston guilty beyond a reasonable doubt. *Houston*, 8th Dist. No. 90780, 2009-Ohio-224, at ¶ 8. The United States Court of Appeals for the Sixth Circuit affirmed the denial of the petition, finding that Houston had not shown that the proceedings against him were fundamentally unfair or resulted in his unjust confinement. *Houston v. Anderson*, 129 F.3d 1264 (6th Cir.1997).

**{¶8}** In June 1998, Houston returned to the trial court and filed a pro se petition for postconviction relief, which the court denied. In December 2003, Houston sought leave to file a motion for a new trial on grounds of newly discovered evidence. Houston argued that Pope had submitted a sworn statement in which he said that "in October 1991 [the witness saw] the actual Perpetrator at a Halloween party approximately one month after the robbery and murder * * *." Pope also said that he lied to the police because "I

was afraid of the Perpetrator and I knew he would kill me if I implicated him in this crime." The trial court conducted a hearing on the application and heard testimony from Pope. Apart from restating his reasons for falsely implicating Houston, Pope testified that he knew the name of the assailant as "Popeye or something" and that the assailant was also known as "Dee" because "he was from Detroit."[3]

{¶9} The trial court denied Houston's application for leave, finding that there was no newly discovered evidence to warrant a new trial. The court found that the events recounted by Pope in 1991, 1992, and 2004 were substantially the same and that Pope had consistently described the assailant as a person who looked like Houston, but who was taller and had a mark on the right side of his face. Pope said Popeye's "'last name was Ware — started with the Dee Ware.'" *Houston*, 8th Dist. No. 90780, 2009-Ohio-224, ¶ 10. The trial court found that "[w]hile Pope claims to know the real perpetrator he has not made an identification." When asked to clarify, Pope said "'[t]he first name was Dee. I don't know if it was any other name Darrell or — and the last name was Ware.'" *Id.*

{¶10} Houston appealed the trial court's denial to this court in *State v. Houston*, 8th Dist. No. 86652, 2006-Ohio-1599. We affirmed the court's refusal to grant leave to file a delayed motion for a new trial, holding that Houston "did not offer any new

---

[3] "The record shows several variations on the spelling of this nickname: Popeye, Popi and Po-Pi. We assume that these spelling variations are pronounced identically to that of the cartoon character 'Popeye,' and use that spelling throughout for simplicity." *Houston*, 8th Dist. No. 90780, 2009-Ohio-224, fn.1.

evidence." *Id.* at ¶ 2. We noted that "[t]he eyewitness had recanted his identification of Houston at trial, and that Houston made this the subject of his post-conviction relief." *Id.* Furthermore, we indicated that "[t]he only new aspect to the motion for a new trial was the statement by the eyewitness concerning his motivation for allegedly misidentifying Houston. The eyewitness'[s] motivation for recanting is irrelevant — the evidence was the recantation, and the recantation was not new." *Id.*

{¶11} Then in January 2007, Houston filed a second application for leave to file a motion for a new trial. In this application, he claimed that Pope could, for the first time, identify Popeye as Eugene Demarr Ware ("Ware"), an inmate in Georgia's penal system, whose voter registration records showed that he lived in Cleveland in 1991. Pope submitted an affidavit stating that "I got a good look at the assailant who I only knew by the street name Popeye aka Po Pi." Pope claimed that "for the first time ever I was shown a photograph of the actual assailant who robbed the store and shot and killed [the storeowner]" and that "I can testify that [Ware] was the actual assailant * * *." Houston also offered the affidavit of Bobby Ray Slaughter ("Slaughter"), a person who lived in the neighborhood where the robbery occurred. Slaughter stated that he identified a photograph of Ware as a person known to him as Popeye, and that in September 1991 Popeye lived downstairs from his sister, who lived near the deli on East 141st Street in Cleveland.

{¶12} The State opposed the application for leave, arguing that Pope had identified Popeye as Ware during the 2004 hearing on the first application for leave to file a motion

for a new trial, so Ware's identity was not new evidence. In October 2007, the trial court granted Houston's application for leave to file a motion for a new trial. In his subsequent motion for a new trial,

> Houston argued that Ware's booking sheet allowed Pope to "identify the actual assailant by his name, identity and aliases (street name Popeye)," and that Pope did not have the opportunity to present this information at trial. The state opposed the motion, arguing that Pope had clearly testified at trial that Houston was not the robber, putting into issue Pope's credibility in light of his strong identification of Houston as the robber immediately after the murder. The state argued that the new evidence would merely try to bolster Pope's credibility and thus did not constitute new and material evidence.
>
> The court granted the motion for a new trial, stating that it would issue a "judgment entry in support of decisions." The court did not, however, issue a judgment entry in support of its decision. The State thereafter sought leave to appeal in this court and we granted that application.

*Houston*, 8th Dist. No. 90780, 2009-Ohio-224, at ¶ 14-15. Houston posted bond and was released from prison in November 2007.

{¶13} On appeal, we affirmed the trial court's decision, concluding that the trial court did not abuse its discretion by granting the motion for a new trial. *Id.* at ¶ 25. After our remand, Houston was reindicted with the aggravated murder, aggravated robbery, and having a weapon while under disability charges. After several delays and a mistrial, the aggravated murder and robbery charges proceeded to a jury trial in August 2010. The having a weapon while under disability charge again proceeded to the bench. After the jury was impaneled, the State moved to dismiss the charges with prejudice. The trial court granted the State's motion and ordered the record in Houston's case sealed.

{¶14} Thereafter, in September 2010, Houston filed the instant complaint for declaratory relief. In his second amended complaint, filed in December 2010, Houston alleged that he was a wrongfully imprisoned individual under R.C. 2743.48. In June 2011, both parties moved for summary judgment. Houston argued the evidence demonstrates that: (1) he was indicted and convicted in 1992 of aggravated murder with a firearm specification, aggravated robbery with the firearm specification, and having weapon under a disability, all of which are felonies; (2) he was sentenced to 33 years to life in prison after his conviction; (3) his convictions were vacated and a new trial ordered in November 2007; (4) he cannot be prosecuted for the offenses again by virtue of the dismissal with prejudice; and (5) he did not commit the offenses for which he was convicted. The State argued that Houston is not a wrongfully imprisoned individual because he pled guilty to having a weapon while under disability and he failed to demonstrate his actual innocence.

{¶15} In February 2012, the trial court granted Houston's motion for summary judgment and denied the State's motion for summary judgment. The trial court found that:

> [Houston's] decision to plead guilty should not bar [him] from pursuing his wrongful imprisonment claim especially given the fact that his underlying convictions for aggravated murder and aggravated robbery were vacated upon the trial court granting his motion for a new trial. Once those convictions were vacated, the guilty plea ceased to be valid. Liberally construing the statute, [Houston's] guilty plea for having a weapon under disability does not bar him from pursuing his wrongful imprisonment claim as a matter of law.

**{¶16}** The trial court further found that there are no issues of material fact with respect to Houston's actual innocence. Therefore, the trial court declared Houston a wrongfully imprisoned individual under R.C. 2743.48.

**{¶17}** It is from this order the State now appeals, raising the following single assignment of error for review.

ASSIGNMENT OF ERROR

The trial court erred in granting [Houston's], and denying [the State's] motion for summary judgment pursuant to [Civ.R. 56].

Standard of Review

**{¶18}** We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1998). In *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201, the Ohio Supreme Court set forth the appropriate test as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 1995-Ohio-286, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a

matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264, 273-274.

{¶19} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.

Wrongful Imprisonment

{¶20} "The Ohio Revised Code provides a two-step process whereby a person claiming wrongful imprisonment may sue the State for damages incurred due to the alleged wrongful imprisonment." *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 72, 1998-Ohio-275, 701 N.E.2d 1002, citing *Walden v. State*, 47 Ohio St.3d 47, 547 N.E.2d 962 (1989). The first action, in the common pleas court, seeks a preliminary factual determination of wrongful imprisonment. *Id.* The second action, in the Court of Claims, provides for damages. *Id.*

{¶21} A "wrongfully imprisoned individual" is defined in R.C. 2743.48(A) as an individual who satisfies each of the following requirements:

(1) The individual was charged with a violation of a section of the Revised Code by an indictment or information prior to, or on or after, September 24, 1986, and the violation charged was an aggravated felony or felony.

(2) The individual was found guilty of, but did not plead guilty to, the particular charge or a lesser-included offense by the court or jury involved, and the offense of which the individual was found guilty was an aggravated felony or felony.

(3) The individual was sentenced to an indefinite or definite term of imprisonment in a state correctional institution for the offense of which the individual was found guilty.

(4) The individual's conviction was vacated or was dismissed, or reversed on appeal, the prosecuting attorney in the case cannot or will not seek any further appeal of right or upon leave of court, and no criminal proceeding is pending, can be brought, or will be brought by any prosecuting attorney, city director of law, village solicitor, or other chief legal officer of a municipal corporation against the individual for any act associated with that conviction.

(5) Subsequent to sentencing and during or subsequent to imprisonment, an error in procedure resulted in the individual's release, or it was determined by a court of common pleas that the offense of which the individual was found guilty, including all lesser-included offenses, either was not committed by the individual or was not committed by any person.

{¶22} The Ohio Supreme Court has stated that the petitioner seeking to establish a claim for wrongful imprisonment must produce more evidence than a judgment of acquittal, which is merely a judicial finding that the state did not prove its case beyond a reasonable doubt. *Ellis v. State*, 64 Ohio St.3d 391, 393, 1992-Ohio-25, 596 N.E.2d 428 (1992), citing *Walden*. The wrongful imprisonment statutes were intended to compensate the innocent for wrongful imprisonment. They are not intended to compensate those who have merely avoided criminal liability. *Walden* at 52; *Gover v. State*, 67 Ohio St.3d 93, 95, 616 N.E.2d 207 (1993). Under R.C. 2743.48(A)(5), the petitioner carries the burden of proof in affirmatively establishing his or her innocence by a preponderance of the evidence.

<u>Guilty Plea</u>

**{¶23}** Here, the parties do not dispute that Houston established R.C. 2743.48(A)(1), (3), and (4). Rather, both parties agree that R.C. 2743.48(2) and (5) are at issue in this case. The State argues that by entering a guilty plea to having a weapon while under disability in his first trial, Houston failed to establish that he is a wrongfully imprisoned individual under R.C. 2743.48(A)(2). In support of its argument, the State emphasizes the fact that R.C. 2743.48(A)(2) requires that Houston was "found guilty of, but did not plead guilty to, the particular charge." Houston, on the other hand, argues that because his guilty plea was vacated, it cannot bar his right to present a claim for wrongful imprisonment.

**{¶24}** This court was presented with an analogous situation in *Dunbar v. State*, 8th Dist. No. 97364, 2012-Ohio-707 ("*Dunbar III*"), *discretionary appeal allowed*, 132 Ohio St.3d 1461, 2012-Ohio-3054, 969 N.E.2d 1230.

**{¶25}** In *Dunbar III*, the plaintiff-appellee, Lang Dunbar ("Dunbar"), was charged with domestic violence for assaulting his fiancée. Immediately following the incident, he instructed his fiancée not to leave the house or answer the door. In November 2004, Dunbar pled no contest to the domestic violence charge in Cleveland Municipal Court, and the court sentenced him to 180 days in jail.

**{¶26}** While incarcerated, the Cuyahoga County Grand Jury indicted Dunbar with three counts of abduction and one count of domestic violence arising from the same November 2004 incident. "Dunbar negotiated a plea agreement wherein he agreed to

plead guilty to one count of abduction in exchange for community control sanctions. The court accepted the plea with full knowledge of its terms but nevertheless imposed a two-year sentence." *Id.* at ¶ 4.

**{¶27}** On appeal, this court found that the trial court erred in imposing a prison sentence in contravention of the plea agreement without affording Dunbar the opportunity to withdraw his plea. *State v. Dunbar*, 8th Dist. No. 87317, 2007-Ohio-3261, ¶ 141. ("*Dunbar I*"). As a result, we directed that his plea be vacated. *Id.* at ¶ 193. On remand, a jury convicted Dunbar of one count of abduction, and the court sentenced him to five years in prison. *Dunbar III,* 8th Dist. No. 97364, 2012-Ohio-707, at ¶ 5. "This court again reversed Dunbar's conviction, this time because it found there was insufficient evidence to support the conviction. *State v. Dunbar*, 8th Dist. No. 92262, 2010-Ohio-239, ¶ 30 (*"Dunbar II"*)." *Dunbar III* at ¶ 5.

**{¶28}** Dunbar then filed a wrongful imprisonment complaint, seeking a declaration that he was a "wrongfully imprisoned individual" under R.C. 2743.48(A). Dunbar and the State each submitted motions for summary judgment. The trial court denied the State's motion for summary judgment and granted Dunbar's motion, declaring him a "wrongfully imprisoned individual." *Id.* at ¶ 7.

**{¶29}** The State appealed, setting forth arguments similar to the instant case. The State first argued "the trial court erred in granting Dunbar's motion for summary judgment and declaring him a 'wrongfully imprisoned individual.' The State contend[ed] that Dunbar's initial guilty plea to the abduction charge precludes him from

qualifying as a 'wrongfully imprisoned individual.'" *Id.* at ¶ 8. The State further argued "the trial court erred in denying its motion for summary judgment because Dunbar failed to prove his innocence by a preponderance of the evidence." *Id.* Dunbar argued that once his guilty plea was vacated, his wrongful imprisonment claim could not be barred.

{¶30} We affirmed the trial court's grant of summary judgment in Dunbar's favor, finding that "[b]ecause a void guilty plea has no effect at law, it does not exist for purposes of determining whether a person has the right to seek compensation under R.C. 2743.48." *Id.* at ¶ 16. In reaching our decision, we relied on *State v. Moore*, 165 Ohio App.3d 538, 2006-Ohio-114, 847 N.E.2d 452 (4th Dist.).

{¶31} In *Moore*, the Fourth District Court of Appeals was confronted with the same issue presented in *Dunbar III*. Moore pled guilty to murder on the advice of counsel and was sentenced to 15 years to life in prison. Moore later learned that another individual involved with the murder tested positive for gunshot residue, while he tested negative. Moore then filed a motion to withdraw his guilty plea. The trial court granted the motion, finding that he did not knowingly, intelligently, and voluntarily enter his plea.

{¶32} Moore's case proceeded to a jury trial, at which he was found not guilty. Moore then filed a wrongful imprisonment claim under R.C. 2743.48. The trial court issued a judgment entry declaring Moore a "wrongfully imprisoned individual," and the State appealed. On appeal, the State argued that Moore could not be declared a

"wrongfully imprisoned individual" because he had previously pled guilty to the charge for which he was imprisoned.

**{¶33}** In affirming the trial court's judgment, the *Moore* court explained that because his guilty plea was void, it carried no force or effect at law. *Moore*, 165 Ohio App.3d 538, 2006-Ohio-114, 847 N.E.2d 452, ¶ 22 (4th Dist.). The *Moore* court further explained:

> R.C. 2743.48 is ambiguous to the extent that it does not explicitly state whether only valid guilty pleas will preclude recovery, or whether guilty pleas that are void will also preclude recovery. R.C. 2743.48's purpose of redressing existing wrongs would not be served by withholding relief from individuals who were wrongfully induced to enter a guilty plea. The narrowest interpretation of R.C. 2743.48, which would preclude recovery even if the guilty plea is nugatory and has no effect at law, would thwart the remedial goals of the statute. On the other hand, interpreting R.C. 2743.48 liberally would result in assuring that a plea that has been determined to have no legal effect does not, in fact, have any legal effect upon either the criminal or civil matters associated with the case. This would further the remedial goals of the statute by addressing the particularly egregious wrong of imprisoning an individual not only wrongfully, but also unconstitutionally. *Id.* at ¶ 23.

**{¶34}** We agreed with the *Moore* court's liberal construction of R.C. 2743.48, noting that Dunbar's guilty plea was vacated because the trial court failed to abide by the parties' plea agreement, which it had approved, without advising Dunbar that it might impose a prison sentence in contravention of the plea agreement. *Dunbar III,* 8th Dist. No. 97364*,* 2012-Ohio-707, at ¶ 16-17. In *Dunbar I*, we explained, "'[w]here a sentence recommendation is an integral part of a plea agreement, the failure to inform the defendant of potential changes may result in a plea that was not entered into knowingly, voluntarily, or intelligently.'" *Id.* at ¶ 139, quoting *State v. Allgood*, 9th Dist. Nos.

90CA004903, 90CA004904, and 90CA004905, 1991 Ohio App. LEXIS 2972 (June 19, 1991). Thus, when the trial court decided to deviate from the plea agreement, it should have clearly advised Dunbar of its intention, and allowed him to reconsider his plea. *Dunbar I*, at ¶ 140. "Without knowledge that the court might impose a prison sentence, Dunbar's plea was not entered knowingly, voluntarily, and intelligently, was void, and therefore, does not preclude his wrongful imprisonment claim." *Dunbar III*, at ¶ 17.

{¶35} Similarly, the facts in the instant case warrant a liberal construction of R.C. 2743.48. The transcript of Houston's first murder trial reveals that Houston only agreed to plead guilty to the weapons charge if the jury first found him guilty of at least one of the other charges. The following colloquy took place prior to trial:

> [DEFENSE COUNSEL]: [We'll] go forward with the discussions that we had in chambers with regards to the fourth count of the indictment. I believe that we have a stipulation with regards to that fourth count, which is having a weapon while under disability, in violation of Ohio Revised Code 2923.13, with a firearm and violent specifications.
>
> The stipulation that I believe that we have reached is that that count of the indictment would not be read to the jury. And that upon that conviction, of any of the first three counts of the indictment, we would then stipulate that Mr. Darrell Houston had in the past been convicted of carrying a concealed weapon and, therefore acquiesce to a finding, of a consistent finding by the court with regards to that count of the indictment.
>
> THE COURT: What would happen in the event of a finding of not guilty to counts one, two, and three? What would happen to count four?
>
> [STATE]: Then the probabilities are, we would request a nolle, your Honor.
>
> THE COURT: All right, sir.
>
> [STATE]: Everything is dependent upon the first three counts.

**{¶36}** Thus, Houston's plea was based on the agreement that he would plead guilty to having a weapon while under disability only if he was first found guilty of at least one of the other charges.    The trial court acknowledged this in its opinion granting Houston's motion for summary judgment when it stated that

> the transcript [of the original murder trial] shows that [Houston's] guilty plea to having a weapon while under disability was contingent on the outcome of his trial for aggravated murder and aggravated robbery.   The guilty plea would stand if the jury found [Houston] guilty of aggravated murder and aggravated robbery, or would be withdrawn if the jury found him not guilty.

The trial court then concluded that "[o]nce [the underlying convictions for aggravated murder and aggravated robbery] were vacated [in *Houston*, 8th Dist. No. 90780, 2009-Ohio-224,] the guilty plea ceased to be valid."

**{¶37}** Moreover, the State concedes in its appellate brief "that [the guilty] plea was subsequently vacated upon [Houston's] second motion for a new trial."    This is evident by the fact that on remand Houston was reindicted with aggravated murder, aggravated robbery, and having a weapon while under disability.   In August 2010, the aggravated murder and aggravated robbery charges proceeded to a jury trial, while the weapon while under disability charge was bifurcated to the bench again.   At this trial, the court granted the State's motion to dismiss the three charges with prejudice and sealed the record. Thus, by virtue of the plea contingency in conjunction with the reindictment and subsequent retrial on the having a weapon while under disability charge, we find that Houston's guilty plea was in fact vacated.

**{¶38}** As we stated in *Dunbar III*, "a void guilty plea has no effect at law, [thus,] it does not exist for purposes of determining whether a person has the right to seek compensation under R.C. 2743.48." *Id.,* 8th Dist. No. 97364*, 2012-Ohio-707, at ¶ 16. Therefore, Houston's guilty plea is a nullity and it does not prevent him from establishing his wrongful imprisonment claim under R.C. 2743.48(A)(2).

<u>Actual Innocence</u>

**{¶39}** The State further argues that Houston failed to establish his actual innocence under R.C. 2743.48(A)(5). The State claims that there is a genuine issue of material fact as to the identity of the assailant and claims that it is entitled to a trial "so that a record can be created." However, in *Dunbar III*, we relied on our decision in *Doss v. State*, 8th Dist. No. 96452, 2011-Ohio-6429, and found that the trial court could rely on prior appellate decisions or the evidence in Dunbar's motion for summary judgment when it declared him a "wrongfully imprisoned individual." *Id.* at ¶ 22-24. Based on the facts in the instant case, the trial court had a sufficient record to rule on both motions for summary judgment.

**{¶40}** Here, the trial court found that the evidence in the record establishes: (1) that Pope, the State's sole eyewitness to the incident, recanted his testimony identifying Houston as the assailant; (2) a lack of evidence connecting Houston to the scene of the crime; and (3) that Houston did not match the physical description of the assailant.

**{¶41}** Pope initially told the police that the assailant looked like Houston, a man he knew by the names of "Darrell" and "Dee." Pope gave the police a description of the

shooter and the jacket, hooded sweatshirt, and shoes the shooter had been wearing. He also told the police that the shooter had a scar or birthmark on the right side of his face. About a month after the shooting, Pope informed the police that he had been at a Halloween party and saw a person who looked like the robber. He told the police that he believed the shooter was a man known to him as Popeye. Then at the original trial, Pope testified that Houston was not the shooter because he did not "see the mark on the right side of his face." Pope testified that the person he saw at the Halloween party about a month after the robbery was definitely the robber because "I remember seeing the same mark on his face that I seen the guy with the mark there. That's what made me change my mind that it wasn't Darrell." Pope's subsequent affidavit identified Ware as the assailant. Slaughter's affidavit established that Ware is known to him as Popeye and in September 1991 Popeye lived downstairs from his sister, who lives near the deli. Typically, the delayed disclosure of a witness's recantation weighs against the believability and truthfulness of the witness. *See State v. Sowers*, 81 Ohio St.3d 260, 263, 1998-Ohio-632, 690 N.E.2d 881. However, in the instant case, Pope recanted his identification of Houston as the robber a month after the shooting and consistently maintained that Ware was the assailant.

{¶42} Furthermore, the State never recovered the gun used to kill Ali. Houston's fingerprints were not found at the scene of the crime, and there was no forensic evidence linking Houston to the incident. The blood found on Houston's coat did not match that of the victim, and the scientific examiner could not conclude that the gunshot residue

recovered from the sleeve of Houston's coat came from the murder weapon. Moreover, the scientific examiner could not place a time or date on when the gunshot residue had been deposited on the sleeve of the coat. In addition, Houston submitted affidavits from five individuals stating that he was with them at the time Ali was robbed and murdered.

{¶43} Lastly, there were conflicting descriptions of the robber's height and weight. At the time of the murder, Houston stood at 5'8" and weighed 140 pounds. However, Pope described the assailant as 5'8" – 5'9" tall and weighing 175 pounds, and the two witnesses who observed the assailant exit the deli described him as 6 feet tall and weighing 175 pounds. Also, Houston did not have any identifiable scars or marks on his face like Pope initially described.

{¶44} Based on the foregoing, Houston affirmatively demonstrated his innocence by a preponderance of the evidence as required by R.C. 2743.48(A)(5). Therefore, we find the trial court properly determined that Houston was a "wrongfully imprisoned individual."

{¶45} Accordingly, the sole assignment of error is overruled.

{¶46} Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

MELODY J. STEWART, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR